**364**

UNITED STATES, Appellee

v.

Nathan W. PEACHES, Airman U.S. Air
Force, Appellant.

No. 55,312.
ACM S26944.

U.S. Court of Military Appeals.

Dec. 23, 1987.

For Appellant: *Major Francis T. Lacey,*
USAFR (argued); *Colonel Leo L. Sergi*
and *Captain Henry J. Schweiter* (on brief);
*Major William H. Lamb.*

For Appellee: *Lieutenant Colonel Mor-
ris A. Tanner,* Jr. (argued); *Colonel Joe R.
Lamport, Lieutenant Colonel Robert E.*

*Giovagnoni, Major David F. Barton* (on
brief); *Colonel Kenneth R. Rengert.*

OPINION OF THE COURT

SULLIVAN, Judge:

Appellant was tried by a special court-
martial composed of a military judge alone
at Clark Air Base, Republic of the Philip-
pines, during October 1985. Contrary to
his pleas, he was found guilty of absence
without leave (20 days) and willful disobedi-
ence of an order from a noncommissioned
officer, in violation of Articles 86 and 91,
Uniform Code of Military Justice, 10 U.S.C.
§§ 886 and 891, respectively. He was sen-
tenced to a bad-conduct discharge, 4
months' confinement, forfeiture of $400
pay per month for 6 months, and reduction
of airman basic. The convening authority
approved this sentence, and the Court of
Military Review affirmed in a short-form
opinion.

This Court granted review of the follow-
ing two issues:

### I

WHETHER THE COURT–MARTIAL
HAD THE STATUTORY AUTHORITY
NECESSARY TO IMPOSE A BAD–
CONDUCT DISCHARGE FOR THE OF-
FENSE COMMITTED.

### II

WHETHER THE DICTATES OF PART
IV, PARAGRAPH 16e, MANUAL FOR
COURTS–MARTIAL, UNITED STATES,
1984, APPLY TO ARTICLE 91 OF-
FENSES.

We hold that the disobedience-of-orders of-
fense cannot be legally sustained under
Article 91. Accordingly, this charge and
the discharge based thereon must be set
aside.

Appellant was found guilty of the follow-
ing offenses:

CHARGE I: Violation of the UCMJ, Ar-
ticle 86

Specification: In that AIRMAN NATHAN W. PEACHES, United States Air Force, 3d Aircraft Generation Squadron, did, on or about 31 August 1985, without authority, absent himself from his organization, to wit: the 3d Aircraft Generation Squadron, located at Clark Air Base, Republic of the Philippines, and did remain so absent until he was apprehended on or about 20 September 1985.

CHARGE II: Violation of the UCMJ, Article 91

Specification: In that AIRMAN NATHAN W. PEACHES, United States Air Force, 3d Aircraft Generation Squadron, having received a lawful order from Chief Master Sergeant Blanchard Carlin, a noncommissioned officer, then known by the said Airman Nathan W. Peaches to be a noncommissioned officer, to report at 0600 on 31 August 1985 to Chief Master Sergeant Elwood Miller, Maintenance Supervision, Building 7623, an order which it was his duty to obey, did, at Clark Air Base, Republic of the Philippines, on or about 31 August 1985, willfully disobey the same.

The evidence of guilt was drawn from the deposition of Chief Master Sergeant Blanchard Carlin which was read at the trial. He was first sergeant of the 3d Aircraft Generation Squadron which was appellant's unit. In response to being asked whether he had "some sort of dealings with Airman Peaches" on August 30, 1985, he stated:

On the 30th of August, yes ma'am. Airman Peaches had just finished serving some detention time as a result of a court-martial, and that was the day that his time had finished. He had completed his stay, the number of days that the court had ordered, and I went over that morning, I guess about eight o'clock, it was on a Friday morning, and signed for Airman Peaches' release from the facility, made sure that he got all his property and everything and we walked over, across the street, it's very close to my orderly room, and I took him in the office, *and I told him that he was to report to Chief Master Sergeant Miller who was the Maintenance Superintendent in AGS the next morning at 0600 hours for duty in military uniform.* Then I handed him a note, et cetera, on that and I told him that the rest of the day was his, he could square his dormitory room away, take care of whatever personal matters he had, just report for work the next morning at six o'clock.

Chief, I'm going to show you what's been marked as Prosecution Exhibit 3 for identification. Chief, could you describe for the record what that is?

The following colloquy occurred at this point during the reading of the deposition:

TC: And at this time, Your Honor, it would be appropriate to attempt to enter Prosecution Exhibit 3. The exhibit which Chief Carlin is about to describe in the deposition.

DC: I have no objection, Your Honor.

MJ: It is admitted.

The reading of the deposition resumed: (The exhibit was handed to the witness.) Yes, ma'am. This is a copy of a note that I gave to Airman Peaches, I put in his hand, and it said that he was to report to Chief Miller at 0600 hours, Saturday, 31 August at Hangar 7623, *and it was a note from my commander that he had given me previously as a result of discussion and I put that in Airman Peaches' hand to make sure that he knew what his instructions were for reporting to duty.*

(Emphasis added.)

The record of trial also includes other excerpts from his deposition, particularly defense cross-examination of Sergeant Carlin.

When he was released from confinement—what day was that, in fact?

He was released on the 30th of August, sir, on a Friday.

Okay, in fact that was the reason you saw him with this, because he was still, what has been previously noted as Prosecution Exhibit for identification 3, the note, *this was to notify him of his duties, is that correct?*

*Yes, sir.*

Because he was still with the squadron?

Yes, sir. That's right.

And is Senior Master Sergeant Miller in charge of the end of runway?

Chief Miller.

Chief Miller, excuse me.

He's the maintenance superintendent over everything, sir. He was not his section supervisor. He was just over all the branches, sir, in the 3d AGS maintenance.

Was Airman Peaches to return to his end of runway duties?

Now, I'm not sure exactly where Chief Miller was going to put him to work, but Chief Miller was going to assign him to work when he reported at 0600 on Saturday. I don't know exactly what supervisor, what section he was going to, but he was going to assign him duty, sir. That was the reason he was to report to Chief Miller's office.

*And that was what Colonel McCarty intended? Right, sir. Yes, sir.*

(Emphasis added.)

----------

The precise legal issue presented in this case is whether the evidence admitted at trial establishes willful disobedience of an order in violation of Article 91(2). *See generally United States v. Bratcher,* 18 U.S. C.M.A. 125, 128, 39 C.M.R. 125, 128 (1969). Appellant asserts that the only offense proven was "a mere failure to report for routine duties as prescribed by routine orders" punishable under Article 86. *See generally United States v. Loos,* 4 U.S.C.

* Our resolution of the first granted issue makes it unnecessary to address the second issue in this

M.A. 478, 480, 16 C.M.R. 52, 54 (1954). We agree.

As a starting point, we note that the order violated in this case originated with Lieutenant Colonel McCarty, not Sergeant Carlin. Moreover, it was an order for appellant to report to Sergeant Miller at his office for assignment of regular work duties. Such orders are routine and their violation has long been prosecuted under Article 86 or its predecessors. *Id. See* W. Winthrop, *Military Law and Precedents* 573, 608–09 (2d ed. 1920 Reprint). Furthermore, Sergeant Carlin clearly stated his intent was to simply notify appellant of his duties. There was no environment of defiance evidenced in this case or any evidence that Sergeant Carlin was making a measured attempt to secure compliance with a previously defied routine order. *Cf. United States v. Landwehr,* 18 M.J. 355, 357 (C.M.A.1984); *United States v. Pettersen,* 17 M.J. 69, 72 (C.M.A.1983). The "ultimate offense" here is a failure to report for duty under Article 86(1). *United States v. Loos, supra;* Part IV, para. 10*b* (1), Manual for Courts-Martial, United States, 1984.

The decision of the United States Air Force Court of Military Review is reversed as to Charge II and its specification, and the sentence. The findings of guilty thereon are set aside and that charge and its specification are dismissed. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on sentence may be ordered.*

Chief Judge EVERETT and Judge COX concur.