UNITED STATES, Appellee,

v.

Christopher T. TAYLOR, Seaman, U.S. Navy, Appellant.

No. 58,067.

NMCM 87 0725.

U.S. Court of Military Appeals.

April 11, 1988.

For Appellant: *Commander J.A. Williams,* JAGC, USN and *Captain Mark Foster,* USMCR (on brief); *Lieutenant Commander Robert J. Smith,* JAGC, USN and *Major J.L. Powers,* USMC.

For Appellee: *Captain Wendell A. Kjos,* JAGC, USN and *Lieutenant Commander L. Friedman,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

In this appeal from his special court-martial conviction upon 15 specifications of dereliction of duty and 17 specifications of failing to go to his appointed place of duty, in violation of Articles 92 and 86, Uniform Code of Military Justice, 10 U.S. C. §§ 892 and 886, respectively,[1] appellant asks whether there was an unreasonable multiplication of charges under the facts giving rise thereto. 25 M.J. 156. We conclude that there was.

Simply put, appellant went on a 6-day work stoppage. Having received what he perceived to be unfair nonjudicial punishment on November 26, 1986, Taylor decided that he would perform no further duties. In fact, he performed none from November 27 through December 2, at which time, out of sheer boredom, he returned to his duty routine. In the interim, he stayed aboard his ship but went nowhere and did nothing.

Predictably, appellant missed a number of assignments during those 6 days. Consequently, with respect to his first day of

---

1. Appellant's convictions were contrary to his pleas and resulted in a sentence extending to a bad-conduct discharge, confinement for 45 days, forfeiture of $426.00 pay per month for 2 months, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in a short-form opinion.

inactivity, he was charged with being derelict in his duties by failing to stand bridge watch and by failing to stand special sea and anchor detail (2 specifications) and with failing to go to restricted men's musters at 1215, 1800, and 2145 hours (3 specifications). There were similar specifications for later days. In sum, as indicated earlier, appellant was alleged to have been derelict in his duties on 15 occasions and to have failed to go to his appointed place of duty 17 times over the 6 days of his work stoppage.

In this Court, appellant urges that treating what he submits amounted to a mere 6–day absence without leave as thirty-two separate crimes is an unreasonable multiplication of offenses. In logical support of this position, he argues that, from the first moment on November 27, his inactivity was the product of a single decision not to perform his duties and that his failure to leave the ship is the only factor which distinguishes his conduct from a 6–day unauthorized absence—a factor which he argues is not legally significant. Alternatively, he urges that, at most, he is guilty of six 1–day absences.

On the other hand, the Government classically argues that "[a]ppellant's misconduct did not constitute a single transaction within the meaning of *United States v. Baker*, 14 M.J. 361 (C.M.A.1983) or the R.C.M. 307(c)(4) discussion. It was instead a collection of separate offenses occurring at different times over a six-day period."

■ We must agree that it does seem logically anomalous that, had appellant physically absented himself from his ship for the 6 relevant days—a situation which might have been more aggravating in the sense that a person who is not present cannot be responsive even to an emergency—he could have been convicted only of an unauthorized absence carrying a maximum punishment of 6 months' confinement and forfeiture of two-thirds pay per month for 6 months. We do recognize, on the other hand, as the Government has urged in its brief, that appellant's presence on the ship, "lounging in his rack or in the ship

library," created an additional evil of "flouting authority in front of his shipmates." It is logically and legally absurd, however, to rely on this factor as the basis for elevating the gravamen of appellant's misconduct to charges which would have been punishable at a general court-martial by a bad-conduct discharge, confinement for more than 7 years, and total forfeitures. Para. 16e (3)(B), Part IV, Manual for Courts-Martial, United States, 1984.

The discussion to R.C.M. 307(c)(4), Manual, *supra*, admonishes that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." *See United States v. Sturdivant*, 13 M.J. 323 (C.M.A.1982), addressing a parallel provision in the Manual for Courts-Martial, United States, 1969 (Revised edition). On the basis of our earlier discussion, we conclude that appellant has been the victim of such an unreasonable multiplication of charges here.

■ Our concern, then, is, under the facts of this case, what was the "one transaction" or the transactions reflected by appellant's misconduct? Notwithstanding appellant's primary position, he is not guilty of a single 6–day unauthorized absence, because he was *not* absent. At all times he was physically present in his unit and under military control. *See* Art. 86(3). *See generally* para. 10c(10), 1984 Manual, *supra; United States v. Jackson*, 1 U.S.C. M.A. 190, 2 C.M.R. 96 (1952) (an unauthorized absence is terminated by a proper exercise of military control over the absentee). Moreover, we appreciate the Government's argument that the pattern of appellant's disregard for discipline and authority inherent in the situation amounts to more than six instances of failing to go to his appointed place of duty. On careful consideration of the facts of the case and the arguments of the parties, we conclude that it is more reflective of the true nature of his misconduct to charge that, on each day of appellant's inactivity, he was guilty of willful dereliction of all his duties that day. Thus, the specifications should be consol-

idated. *See United States v. Sorrell*, 23 M.J. 122 n. 1 (C.M.A.1986).

The decision of the United States Navy-Marine Corps Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for consolidation of the specifications and charges to allege violations of Article 92(3); then the court may reassess [2] the sentence on the basis of the consolidated specifications or set aside the sentence and authorize a rehearing.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and concurring in the result in part):

*Assuming* for the sake of argument the Government has adequately proven the sentence-aggravating element of willfulness [*] in the dereliction charge, I agree that, as a matter of law, it is possible for dereliction to survive an Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, gravamen-of-the-offense challenge. *Cf. United States v. Peaches*, 25 M.J. 364 (C.M.A.1987). I do not, however, discern in these facts the difference between willful failure to report for—and thus failing to perform—certain duties such as standing bridge watch and simple failure to report for—and thus failing to perform—the duty of standing restricted muster. Thus I agree that the Government, by charging some of these refusals as dereliction and others as failure to repair, has effected a twofold increase in the *types* of offenses. Nothing in this record suggests to me that the failures to report for muster formation constituted any less willful an avoidance of military duty than the failures to perform watch. Thus I assume that *all* of these charges theoretically could have been brought under *either* Article 86 or Article 92.

The next question is: How many derelictions or failures to repair can the Government charge? The problem is that the Government, potentially, is in a position to slice up the day or the description of one's duties into just as many subunits as creativity and time permit. Obviously at some point this becomes overreaching. *See United States v. Sturdivant*, 13 M.J. 323 (C.M.A.1982). Given the pattern of charging here, I agree that this point was far exceeded.

Emphatically, however, I do not conclude, as a matter of law, that it is *impossible* for the Government to defend more than one dereliction or absence charge for a single day. Obviously, in my view, there is room for some discretion or rule of reason on the part of charging authorities and military judges. Because that discretion was abused here, I join in the result reached in the majority opinion.

**2.** *See United States v. Suzuki*, 20 M.J. 248 (C.M.A.1985).

\* Article 92(3), Uniform Code of Military Justice, 10 U.S.C. § 892(3), provides merely:
    Any person subject to this chapter who—... is derelict in the performance of his duties; shall be punished as a court-martial may direct.
    The President, under his authority to prescribe punishments, Art. 56, UCMJ, 10 U.S.C. § 856, has established a two-tier punishment scheme. For derelictions "[t]hrough neglect or culpable inefficiency," the maximum punishment per occurrence is "[f]orfeiture of two-thirds pay per month for 3 months and confinement for 3 months." For "[w]illful" dereliction, it is "[b]ad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months." Para. 16*e*(3), Part IV, Manual for Courts-Martial, United States, 1984.