UNITED STATES

v.

**Airman Basic Anthony D. BATTLE, FR 354–64–3916, United States Air Force.**

**ACM S27807.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 March 1988.

Decided 14 Dec. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi; Major Mark R. Bell and Lieutenant Colonel Francis T. Lacey, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Jeffrey H. Curtis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

LEWIS, Senior Judge:

We turn our attention once more to the issue of proper identification of the ultimate offense as it relates to the failure to obey an order. We have been unsuccessful in our attempts to resolve this issue in two recent cases. *United States v. Caton*, 23 M.J. 691 (A.F.C.M.R.1986), *rev'd in pertinent part*, 25 M.J. 223 (C.M.A.1987) (summary disposition); *United States v. Peaches*, 25 M.J. 364 (C.M.A.1987), reversing a memorandum opinion of this Court. Our problem in the past, we believe, is attributable in part to what we perceive as a lack of uniformity in military precedents. In the consideration of this case we have been assisted by the excellent oral arguments of counsel for both parties.

### Factual Background

The appellant was charged with willful disobedience of his commander's order by failing to attend a scheduled upgrade training session in violation of Article 90, UCMJ, 10 U.S.C. § 890, and two specifications of breaking restriction in violation of Article 134, UCMJ, 10 U.S.C. § 934. More

specifically, the Article 90 offense was premised on a written order of the commander. In the order the commander directed that the appellant adhere to a rigorous training schedule which was set forth in detail. A brief sequence of events leading up to the charged violation reflects that the commander issued the written order on 5 February 1988. He was prompted to do so because the appellant had failed to make reasonable progress in upgrade training as a wideband radio operator. Three days previously the appellant had been served with notice of nonjudicial punishment for dereliction of duty in negligently falling asleep and failing to perform upgrade training on 28 January 1988. On the day the written order was issued the commander served another notice of proposed nonjudicial punishment for a failure of the appellant to report to his appointed place of duty the previous day, 4 February 1988. A week later, on 11 February 1988, the appellant received yet a third notice of proposed nonjudicial punishment for willfully disobeying the order to report for scheduled upgrade training on 7 and 8 February 1988. An additional failure to obey the order on 20 February 1988 was the basis for the Article 90 offense charged at trial.

The appellant pleaded guilty to the two breaking restriction offenses and to the lesser included offense of failing to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892. He was found guilty in accordance with his pleas. The government elected not to pursue the charged Article 90 violation. The appellant's sentence, as adjudged and approved, is a bad conduct discharge, confinement for two months and forfeiture of $400.00 per month for two months.

### Statement of the Issue

The issue before us is whether a punitive discharge is authorized in this case. The key to this issue is the identification of the ultimate offense with respect to the failure to obey. The precise question involved is whether the maximum punishment may be based on a failure to obey the commander's order in view of the fact that the underlying basis of the failure to obey was a failure to go to an appointed place of duty, Article 86, UCMJ, 10 U.S.C. § 886. This offense does not authorize the imposition of a punitive discharge. MCM, Part IV, paragraph 10e(1) (1984). If the offense may be punished as a failure to obey an order, a punitive discharge is authorized. MCM, Part IV, paragraph 16e(2) (1984). If not, a punitive discharge is not authorized even if the remaining offenses, two breaches of restriction, are considered. MCM, Part IV, paragraph 102e (1984). *See* R.C. M. 1003(d)(3).

### Identification of the Ultimate Offense

Counsel for both sides have cited the Court of Military Appeals' recent decision in *United States v. Peaches* as guidance for how we ought to resolve the issue at hand. They differ in their interpretations of exactly what that guidance is. *Peaches* involved the question of whether the accused's ultimate offense was: (a) a mere failure to go to his place of duty under Article 86, UCMJ, or (b) the more aggravated offense of willful disobedience of the order of a noncommissioned officer in violation of Article 91, UCMJ, 10 U.S.C. § 891. The Court held that the ultimate offense was a failure by the accused to go to a place of duty designated by the order. Therefore, the Article 91 conviction could not stand. However, in the case before us the appellant pleaded guilty to a violation of Article 92, UCMJ. Therein lies a critical difference.

█ Article 90 and 91 offenses include the aggravating element of willfulness. MCM, Part IV, paragraphs 14b(2)(d) and 15b(2)(e) (1984). When the ultimate offense is found to be the underlying behavior as opposed to the willful disobedience of superior authority the disobedience charge and specification are subject to dismissal. *United States v. Peaches.* The Manual enunciates a separate ultimate offense test for application in Article 92 situations, failures to obey orders and violations of regulations. MCM, Part IV, paragraph 16e, Note, (1984), provides in pertinent part that the Article 92 maximum punishment does

not apply "if in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed...." However, in such instance, an accused does not escape punishment entirely. The Article 92 rule limits punishment but not the manner in which an offense is charged. The Manual rule for Article 92 situations provides, in essence, that the finding of guilty of failure to obey an order stands but that the punishment is limited to that which is authorized for the underlying, or ultimate, offense. As previously noted, a punitive discharge is not authorized if the disobedience of the order is punished as a failure by the appellant to report to his place of duty in this case. MCM, Part IV, paragraph 10e(1) (1984). *See* R.C.M. 1003(d)(3).

This limitation on punishment rule is not new. It was found in Footnote 5 to the Table of Maximum Punishments in the 1969 Manual. MCM 1969 (Rev.), paragraph 127c, n. 5. A predecessor to the rule as it is presently worded was found in the 1951 Manual. It provided that Article 92 punishment did not apply if the action constituting a violation of an order also constituted an offense punishable elsewhere under the Code. MCM, 1951, paragraph 127c, n. 5. An analysis of the adoption of the present language reflects that the Manual drafters intended to prevent an increase in punishment for an offense already prescribed simply by reason that the act constituting the offense also constituted the violation of an order. Department of Army Pamphlet 27–2, *Analysis of Contents: Manual for Courts–Martial, United States 1969, Revised Edition,* (July 1970), pp. 25–9—25–10. *See United States v. Quarles,* 1 M.J. 231, 232–233 (C.M.A.1975).

*Development of Article 92 Punishment Limitation in Case Law*

■ Examples of the application of the Article 92 rule on punishment limitation may be found in the following cases: *United States v. Timmons,* 13 M.J. 431 (C.M.A. 1982); *United States v. Quarles; United States v. Hofmiller,* 12 U.S.C.M.A. 479, 31

C.M.R. 65 (1961); *United States v. Hammock,* 8 U.S.C.M.A. 245, 24 C.M.R. 55 (1957); *United States v. Lowe,* 4 U.S.C.M. A. 654, 16 C.M.R. 228 (1954); *United States v. Loos,* 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954); *United States v. Taylor,* 32 C.M. R. 851 (A.F.B.R.1962); *United States v. Miller,* 16 M.J. 858 (N.M.C.M.R.1983). *See also United States v. Cave,* 17 U.S.C.M.A. 153, 37 C.M.R. 417 (1967), which appears to analyze the applicability of the Article 92 punishment limitation rationale in an inappropriate situation involving the willful disobedience of an order. The cases cited may be read as supporting the rule as it was apparently envisioned by the Manual drafters. In other words, an accused will not suffer an enhancement of punishment merely because the possible commission of a minor offense has been anticipated and incorporated in an order or regulation. However, as indicated in our opening paragraph, the punishment limitation rule has not been applied in a uniform manner at the appellate level. There are other cases that need to be examined to obtain a better view of how uneven the interpretations of the limitation have been.

A rather striking example of what we perceive as the lack of uniformity in the application of the limitation may be seen in comparing the results in *United States v. Yunque–Burgos,* 3 U.S.C.M.A. 498, 13 C.M.R. 54 (1953), and *United States v. Showalter,* 15 U.S.C.M.A. 410, 35 C.M.R. 382 (1965). Both cases concerned violations of lawful general regulations limiting the wear of civilian clothing by members stationed in foreign areas. In the former case, the Court of Military Appeals determined that the gravamen of the offense was the violation of the directive, while in the latter case the prescribed punishment for a simple uniform violation would apply. The primary distinction between the cases, as we understand them, rests in the Court's analysis of the importance to command of maintaining strict control of the activities of its personnel in sensitive overseas environments. For a further discussion of the rationale for the two differing results, see *United States v. Timmons,* 13

M.J. at 433, n. 2. While these cases are not particularly instructive for the purpose of resolving the specific factual issue before us, they reflect the unpredictability of application or non-application of the punishment limitation at the appellate level.

The "gravamen of the offense" test was developed in *United States v. Buckmiller*, 4 C.M.R. 96 (C.M.A.1952). There, the accused, having been orally directed by his acting first sergeant to report to a given detail for work, replied that he did not have to. Instead of reporting, he turned and walked away. Noting the disrespect inherent in the accused's actions, the Court deemed his offense to be more serious than a mere "failure to report for routine duties as prescribed by routine orders." *Id.* at 98. The Court concluded that "[t]he gravamen of the offense disclosed by the acts alleged in the specification here was a knowing failure to obey the direct, personal order of a superior." *Id.* Under these circumstances the Court did not apply the Article 92 sentence limitation, but held that the accused had properly been sentenced in accordance with the prescribed punishment for failure to obey the order. The *Buckmiller* rationale has apparent validity beyond Article 92 situations. In *United States v. Peaches*, the Court of Military Appeals concluded that Article 91 should not be used as a basis for charging what was essentially a failure to report for "routine" duties. 25 M.J. at 366. The Court also noted the absence of an "environment of defiance" in the acts by the accused in that case. *Id. See United States v. Burroughs*, 49 C.M.R. 404 (A.C.M.R.1974), which suggests that the Article 92 limitation of punishment rule, while not directly applicable to Article 90 and 91 situations, may be applied by way of analogy.

In *United States v. Larney*, 2 U.S.C. M.A. 563, 10 C.M.R. 61 (1953), the primary focus was whether the accused should be punished in accordance with a short absence without leave or the failure to obey the written order of his commanding officer to report to a new duty station on or before a given date. The Court concluded that the Article 92 sentence limitation did not apply. The Court reasoned, as follows:

"Here there was a disobedience of a direct, personal and written order of a superior officer which was not given for the purpose of increasing punishment." *Id.* at 67. This result is somewhat difficult to reconcile with the later decision in *United States v. Loos*, which is often cited as the leading case in the development of the law on this point. On its facts, *Loos* bears a close resemblance to the case before us. The accused had been sentenced by summary court-martial to perform hard labor without confinement. His commander issued an order with detailed instructions concerning how this punishment was to be carried out. On the third day after the issuance of this order the accused began failing to comply with his obligations under the order. The Court viewed the accused's acts of noncompliance as failures to perform routine duties in accordance with a routine directive. Surprisingly, the Court declined to characterize the commander's order as a direct personal order, but nonetheless remarked, in an often cited dictum: "It is undeniable that a superior officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck—and thus remove the failure to perform it from within the ambit of Article 86(1)...." 16 C.M.R. at 54–55. *Loos* is destined to be remembered more for this dictum than for its holding.

A more recent case reflects that the factors one must use in determining whether the sentence limitation applies have remained constant even if the resulting conclusions to be drawn therefrom do not always appear consistent. In *United States v. Timmons*, the accused reported to work in an inappropriate uniform. He was given a verbal order by a petty officer to report in the correct uniform the next day, but did not do so. Without a great deal of analysis, the Court concluded that the accused should not be punished for violation of the order. The gravamen of his offense was determined to be appearing for duty out of uniform. However, Judge Cook, the author judge, remarked that the facts presented a "close case." He noted that under "more aggravated circumstances"

the Court might have concluded that the accused's superior properly used his authority to prevent continued defiance of uniform requirements. 13 M.J. at 434, n. 4.

### Factors Used in Identifying the Ultimate Offense

■ Thus, the applicable case law provides us with a number of factors to balance in determining the gravamen of an offense and, as a consequence, whether the sentence limitation applies. Among those that are highlighted in the decisions we have discussed are whether a superior has personally and directly issued an order, whether the duties imposed by the order were routine in nature, whether the accused's violation of the order was marked by defiance, and whether or not the order was formulated with an eye to enhancing the punitive consequences of a possible violation. Before we consider these factors in the context of the fact situation before us, we should note that there is one apparently simple—and perhaps simplistic—method of disposing of this issue regardless of how the various factors are balanced. It was the commander's order that established the time and place of duty in this case. Thus, one could argue that in the absence of the order the appellant would not have committed an offense as he would not have been required to report for training at a prescribed time and place. Based on this line of reasoning, there is no "underlying offense" we may look to in the absence of the order. However, we believe such reasoning is faulty. We must acknowledge that places and hours of duty are routinely established by orders and directives of some sort. The clear import of the Manual provision is that violations of such orders and directives will normally be punished as failures to go to prescribed places of duty and not in accordance with the more stringent provisions of Article 92.

We also acknowledge, as does the case law, that exceptions to the general rule must be recognized in appropriate circumstances. There are situations in which a commander or other superior must be able to place the full weight of his or her authority behind what would otherwise be a routine order or directive and depend on that authority being recognized in a trial by court-martial. *See generally, United States v. Loos.*

### Analysis of Factors

■ With these observations in mind, we turn back to the facts of the instant case. There is little doubt that the appellant's commander personally and directly issued an order and, in so doing, imposed a duty which extended over and beyond his normal duty schedule. The order was given for the specific purpose of seeking the appellant's upgrade. In our view, it contemplated something other than a routine duty. It is difficult to determine whether the appellant's failure to obey the order was marked by defiance in light of the conflicting precedents we have discussed. If one considers that the appellant had received notice of nonjudicial punishment for two violations of the order prior to the violation which led to his court-martial, one may well discern a pattern of defiance. On the other hand, the record reflects no overtly defiant act by word or deed.

We now confront what may be the most difficult of the enumerated factors to assess. Was the commander contemplating possible enhancement of punishment in the event of a violation of the order? We have carefully considered the circumstances presented in the record, the commander's testimony as a sentencing witness and the oral argument of appellate counsel. At the time of argument we noted the frustration inherent in attempting to determine the commander's motivation after the fact when the issue under consideration was not specifically addressed, nor apparently recognized, by the parties at trial. Although this is a difficult issue to consider for the first time at the appellate level, this is the forum in which the issue has, nevertheless, been dealt with on numerous occasions in the past. More often than not, the resulting conclusions and holdings have seemed more the product of the judges' instincts than the result of a reasoned analysis of the record. As we weigh the various circumstances bearing on the commander's

motive, and the arguments of counsel concerning those circumstances, we can only conclude that they are not clearly susceptible of one inference to the exclusion of another.

### Conclusion and Guidance for Future Cases

 We are not persuaded that the more stringent punishment of Article 92 is applicable in this case based on that which is available in the record before us. Our review of case law convinces us that the issue of whether the maximum punishment under Article 92 is applicable when the failure to obey an order is activity otherwise punishable as a minor offense is one that should be determined by the military judge at trial in the first instance. The military judge is in the best position to consider the available evidence, make essential findings of facts and draw conclusions supported by the findings while applying the factors we have identified in our survey of cases. The Manual provision creates a presumption that the accused will be punished in accordance with the underlying minor offense. Therefore, it is incumbent that the government raise the issue and bear the burden of proof when it is asserted that the maximum punishment authorized by Article 92 should be applied.

### Providence Issues

 Based on our conclusion that the underlying offense of failure of the appellant to go to the appointed place of duty was the appropriate measure of punishment in this case, the punitive discharge cannot stand. We have considered the possibility that the accused was influenced in his pleas of guilty by the erroneous advice that a punitive discharge was an authorized component of punishment. R.C.M. 910(c)(1). This was not a case involving a significant disparity in confinement between the maximum punishment and the appellant's misapprehension as to maximum punishment. *Cf. United States v. Hunt*, 10 M.J. 222 (C.M.A.1981); *United States v. Walls*, 9 M.J. 88 (C.M.A.1980); *United States v. Castrillon–Moreno*, 7 M.J. 414 (C.M.A.1979); *United States v.*

*English*, 25 M.J. 819 (A.F.C.M.R.1988), *rev'd in part*, 27 M.J. 400 (C.M.A.1988). In this instance, we are not persuaded that the appellant pleaded guilty "because this was the only means of avoiding a crushing sentence." *United States v. Hunt*, 10 M.J. at 224. Accordingly, we conclude that the advice the appellant received as to maximum punishment was not a factor that caused him to plead guilty to failure to obey a lawful order.

By a separate assignment of error appellate defense counsel argue that the appellant's plea of guilty to the Article 92 offense was not provident inasmuch as he required constant "coaching" from the military judge to negotiate the providence inquiry satisfactorily. Based on our review of the entire record we have concluded that the appellant's plea of guilty was provident. *United States v. Penister*, 25 M.J. 148 (C.M.A.1987).

We have reassessed the sentence in light of our conclusion that the failure to obey a lawful order may be punished only as a failure to go to an appointed place of duty. We approve only so much of the sentence as provides for confinement for two months and forfeiture of $400.00 per month for two months. We are convinced that the reassessed sentence is no greater than would have been adjudged if the appropriate maximum punishment had been applied at trial. The findings of guilty and the sentence, as modified, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge KASTL (concurring):

I am of two minds about this case. My heart counsels me to join the dissenting judge, who fabricates an extremely strong argument based on logic and military discipline. On the other side, my head tells me that precedent suggests the views expressed by the author judge. Until the Court of Military Appeals changes the law or elaborates upon it further, I reluctantly

find myself bound by those decisions. Accordingly, I concur.

Judge BLOMMERS
(concurring/dissenting in part):

Except for the ultimate result reached, I wholeheartedly agree with almost everything set forth in Senior Judge Lewis' comprehensive opinion addressing a complex and still, in my judgment, somewhat unsettled area of military criminal law. I believe the appellant should be subject to the greater punishment provided for violating the written order issued by his commander.

As the majority opinion states: "There are situations in which a commander or other superior must be able to place the full weight of his or her authority behind what would otherwise be a routine order or directive and depend on that authority being recognized in a trial by court-martial." I couldn't agree more, and in my judgment this case presents just such a situation. *United States v. Timmons,* 13 M.J. 431, 433 (C.M.A.1982). *See also United States v. Landwehr,* 18 M.J. 355 (C.M.A.1984); *United States v. Cave,* 17 U.S.C.M.A. 153, 37 C.M.R. 417 (1967); *United States v. Larney,* 2 U.S.C.M.A. 563, 10 C.M.R. 61 (1953); *United States v. Buckmiller,* 4 C.M.R. 96 (C.M.A.1952). In my view, where there is no indication that an order was issued with a view toward enhancing the punitive consequences of a possible violation (I find none in the record now before us), and a commander finds it necessary to issue a direct and personal order to get a servicemember's attention, then that order must be backed up by the full authority of our law. To do otherwise will not enhance, but endanger, our military disciplinary system.

While on this subject, I will take the opportunity to express a long-standing personal concern with the provisions of the Note under paragraph 16e, Part IV of the 1984 Manual (before commonly referred to as "Footnote 5"). I see the potential for disparate treatment under this rule. A hypothetical will serve to illustrate this concern. Airmen A and B work in civil engineering, principally as tree-trimmers. Both have been recently recalcitrant in performing their duties. One morning they are called into their commander's office and given direct orders to go out and trim certain trees along Maple Street on the base. After acknowledging the orders, Airman A immediately goes back to his barracks room and falls asleep. Airman B is not quite so smart. He gets into his truck and goes out to the job site, but then decides he's tired of trimming trees. He leans up against one of the trees he's supposed to trim and does nothing. Both are tried by court-martial for willful disobedience of the commander's order, but enter pleas of guilty and are found guilty of the lesser offense of failing to obey the order. As I read the Note, Airman A can be punished for no more than a failure to go offense, whereas Airman B could be punished for failing to obey the order, or at the least a dereliction of duty, both of which provide for more punishment than a failure to go. Yet, there seems to be little difference in the degrees of criminality involved in the two cases. In fact, some might argue that Airman A's conduct was more reproachful than Airman B's, for at least B went to the job site.