# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**
**v.**
**Private E1 BRYCE M. PHILLIPS**
**United States Army, Appellant**

ARMY 20120585

Headquarters, Fort Carson
Mark A. Bridges, Military Judge (arraignment)
Craig S. Denney, Military Judge (trial)
Colonel John S. Irgens, Staff Judge Advocate

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Robert N. Michaels, JA (on brief).

For Appellee: Major Robert A. Rodrigues, JA; Major Catherine L. Brantley, JA; Captain Jessica J. Morales, JA (on brief).

31 January 2014

---------------------------------------------------------------
OPINION OF THE COURT ON RECONSIDERATION
---------------------------------------------------------------

LIND, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of two specifications of absence without leave, one specification of willfully disobeying a superior commissioned officer, and one specification of wrongful use of cocaine, in violation of Articles 86, 90, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, and 912a [hereinafter UCMJ]. Appellant was sentenced to a bad-conduct discharge and confinement for nine months. The convening authority approved the sentence adjudged and credited appellant with sixty-two days of confinement credit for pretrial confinement.

---

[1] Senior Judge YOB took action in this case prior to his permanent change of duty station.

PHILLIPS—ARMY 20120585

Appellant's case is now pending review before this Court pursuant to Article 66, UCMJ.[2] Appellant's sole assignment of error is that the military judge erred by not applying the "ultimate offense" doctrine, and, therefore, improperly convicted him of the Additional Charge and its Specification, willful disobedience of an order. We disagree.

## FACTS

Appellant was absent without leave (AWOL) from his Fort Carson unit from on or about 8 November 2010 until on or about 2 March 2012, when he was sent back to Fort Carson following incarceration due to civilian convictions. When appellant went AWOL, he was pending trial by court-martial scheduled to be held on 8 November 2010. In his stipulation of fact, appellant admits that one reason he left was to impede those criminal proceedings. On 14 March 2012, appellant's company commander, Captain (CPT) PE, ordered appellant to remain on the Fort Carson installation. Captain PE personally conveyed this order to appellant in the form of a written counseling statement. Appellant acknowledged his understanding of the order with his signature. On or about 11 April 2012, appellant disobeyed CPT PE's order by driving off the Fort Carson installation to visit his girlfriend.[3] At his subsequent court-martial, appellant was charged with willfully disobeying an order for this misconduct (The Additional Charge and its Specification).

## DISCUSSION

Appellant pleaded guilty at trial to the Additional Charge and its Specification as a violation of Article 90, UCMJ. Appellant now argues this was in error because the ultimate offense for this misconduct was breaking restriction. Appellant further contends that the government's decision to charge this offense as willfully disobeying a superior commissioned officer exaggerated his criminality.[4] Article 90, UCMJ, carries a maximum sentence of a dishonorable discharge, confinement for

---

[2] An appellate panel initially rendered a decision in this case, however, upon motion of the government, this court granted both the motion for reconsideration and the suggestion for *en banc* consideration.

[3] In the stipulation of fact, appellant admits to persistently and willfully disobeying CPT PE's lawful command not only by leaving post on several occasions but also by residing off-post.

[4] This was a special court-martial in which the jurisdictional maximum punishment was reached by other offenses to which appellant pleaded guilty. Appellant recognizes the Article 90, UCMJ, charge did not increase his maximum punishment exposure, but argues it exaggerated his criminality thereby enabling trial counsel to argue for a harsher sentence.

2

five years, total forfeiture of all pay and allowances, and a reduction to the grade of E-1.[5] *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 14.e(2); Rule for Courts-Martial [hereinafter R.C.M.] 1003(b)(4). Breaking restriction is an offense under Article 134, UCMJ, and it carries a maximum sentence of confinement of one month, forfeiture of two-thirds pay per month for one month, and reduction to the grade of E-1. *MCM*, pt. IV, ¶ 102.e; R.C.M. 1003(b)(4).

We do not find issue with either the charging decision or the plea. There is nothing in the record that gives any indication the commander's intent in giving this order was to escalate the criminal liability of appellant. *See United States v. Landwehr*, 18 M.J. 355, 356-57 (C.M.A. 1984) ("[A]n order given solely for the purpose of increasing the punishment for not performing a pre-existing duty should not be made the grounds of an Article 90 violation . . . ."). To the contrary, it appears prudent for CPT PE to have issued such an order given appellant's prior history of absenting himself while pending disciplinary action. Under the facts of this case, either Article 90, UCMJ, or Article 134, UCMJ (breaking restriction), were viable offenses properly chargeable by the government, assuming the government had evidence of the terminal element (conduct prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces) for a breaking restriction charge. This Court may not prescribe which one the government should charge when there is a legal and factual basis for both.[6] *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.").

---

[5] Here, at a special court-martial, for a violation of Article 90, UCMJ, the most severe punitive discharge appellant could have received was a bad-conduct discharge, the maximum sentence to confinement was one year, and adjudged forfeitures could not have exceeded two-thirds pay per month for twelve months. R.C.M. 201(f)(2)(B)(i).

[6] We note that had the government decided not to prosecute this conduct under a theory of willful disobedience, there would have been no legal obstacle to charging this under the lesser-included offense of failure to obey an order, Article 92, UCMJ. *See United States v. Ranney*, 67 M.J. 297 (C.A.A.F. 2009). In other words, we do not believe that the Presidentially-defined offense of breaking restriction under Article 134, UCMJ, somehow preempts the statutory offenses of disobedience found in Articles 90, 91, and 92, UCMJ. *MCM*, pt. IV, ¶ 60.c(5)(a); *Landwehr*, 18 M.J. 355. The appropriate maximum punishment in those cases of disobedience that also satisfy other offenses is an altogether different question. *See United States v. Quarles*, 1 M.J. 231 (C.M.A. 1975). *See also United States v. Hargrove*, 51 M.J. 408, 409 n.2 (C.A.A.F. 1999).

During the providence inquiry, the military judge correctly advised appellant of the elements of the offense of willfully disobeying an order of a superior commissioned officer, and that "willful disobedience" means an intentional defiance of authority. Appellant admitted that the elements and definitions described what he did. In particular, he admitted that he was given a lawful command from CPT PE, his superior commissioned officer, that he understood the command, and that he made the decision to violate the command knowingly and voluntarily. Furthermore, when asked by the military judge why he was guilty of the offense, appellant stated: "Because I was residing off post when **I was clearly given a command** to stay on post and not break restriction." (emphasis added).

The providence inquiry and the stipulation of fact establish that CPT PE exercised the full authority of his office when issuing the order. Unlike in *Hargrove*, 51 M.J. 408, where the company commander informed the appellant of his restriction, but left the scope of the restriction to subordinates, here CPT PE personally conveyed the order to appellant in writing and had appellant sign an acknowledgement. Although the military judge did not expressly ask appellant whether CPT PE gave the order with "the full authority of his office" intending to "lift [the duty to remain within certain limits] above the common ruck," *United States v. Loos*, 4 U.S.C.M.A. 478, 480-81, 16 C.M.R. 52, 54-55 (1954), the facts admitted by appellant in his providence inquiry and stipulation of fact demonstrate CPT PE gave the order "with the full authority of his office." Appellant knew this and intentionally defied CPT PE's authority. Because the elements were met for willful disobedience under Article 90, UCMJ, this charge was not preempted by Article 134, UCMJ (breaking restriction), nor was there a requirement during the providence inquiry to distinguish between these two offenses.[7]

We find the record as a whole does not provide a substantial basis in law and fact to reject appellant's plea of guilty to willfully disobeying an order of a superior commissioned officer, in violation of Article 90, UCMJ. *See United States v. Inabinette*, 66 M.J. 320 (C.A.A.F. 2008).

---

[7] The dissenting opinions insist that we are either abolishing or ignoring any distinction between willful disobedience and breaking restriction. We do neither. The distinction is elemental. Willful disobedience requires an intentional defiance of authority while breaking restriction merely requires going beyond the limits of the restriction before being released therefrom by proper authority. *MCM*, pt. IV, ¶ 102.b(5). We find the facts of this case, as admitted to by appellant, meet the elements of willful disobedience. That the same facts may also satisfy the elements of breaking restriction is irrelevant to the sufficiency of appellant's plea.

PHILLIPS—ARMY 20120585

**CONCLUSION**

On consideration of the entire record, we hold the findings of guilty and sentence as approved by the convening authority correct in law and fact. Accordingly, those findings of guilty and the sentence are AFFIRMED.

Chief Judge PEDE, Senior Judge KERN, Senior Judge COOK, Judge CAMPANELLA, Judge ALDYKIEWICZ, Judge MARTIN, and Judge HAIGHT concur.

YOB, Senior Judge, concurring in part and dissenting in part:

I also concur in part and dissent in part with the majority opinion, for reasons consistent with those expressed in Judge Krauss's opinion.

As the majority opinion acknowledges by favorably citing the standard articulated in *United States v. Loos*, 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954), military courts have long recognized a distinction between the offenses of breaking restriction, a violation of Article 134, UCMJ, and willful disobedience of a superior commissioned officer, which falls under Article 90, UCMJ. Both offenses have elements requiring proof that the accused violated an order from a person who was authorized to issue that order. However, in cases where the order directs a soldier to remain within certain limits, a violation of the order would constitute the offense of breaking restriction, unless there is some form of proof or admission that the order was given with the "full authority of [the commander's] office" intending to "lift [the duty to remain within certain limits] above the common ruck." *Id.* at 54, 16 C.M.R. at 480.

Willful disobedience and breaking restriction are qualitatively different crimes within the spectrum of military offenses. Willful disobedience carries a possible maximum punishment of confinement that is *sixty* times greater than the maximum punishment of confinement under breaking restriction. *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶¶ 14.e(2), 102.e. On top of that, willful disobedience offenses can result in the imposition of a punitive discharge, while breaking restriction does not authorize any such punishment. *MCM*, pt. IV, ¶¶ 14.e(2), 102.e. The punishment that could result from a conviction for willful disobedience is far more severe even than the punishment authorized for escape from pretrial confinement (charged pursuant to Article 95, UCMJ, when a person who is lawfully ordered into pretrial confinement violates that order by escaping from the physical restraint imposed). *MCM*, pt. IV, ¶19.e(4). In escalating conduct that amounts to breaking restriction to the offense of willful disobedience the majority opinion would allow the absurd effect of transforming a breaking restriction offense into an offense that is a far more serious offense than escaping from confinement.

5

In this case, the facts developed indicated appellant's commander considered placing him in pretrial confinement as a result of appellant's past behavioral issues and lack of accountability. It is not unusual for commanders to impose restriction in such circumstances, as a lesser form of restraint than pretrial confinement. None of the admissions by appellant in the stipulation of fact or during his providence inquiry indicated that the order he received from his commander was to be anything more than this typical situation in which a commander imposes restriction following some misconduct the unit is attempting to address.

The providence inquiry in this case was factually and legally inadequate to support a finding of guilty to a violation of Article 90, UCMJ, for willful disobedience of a superior commissioned officer as it raised a substantial basis in law and fact to question appellant's plea. *United States v. Inabinette*, 66 M.J. 320 (C.A.A.F. 2008). Our superior court has held that "[t]he providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51 (1969)).

As noted above, the facts indicated nothing lifting the commander's order above anything more than the simple imposition of restriction. Even if the factual admissions of the appellant during his providence inquiry could be interpreted by a military judge to constitute the rare case in which the restriction is "lifted above the common ruck," in the context of a guilty plea it would also be incumbent on the military judge to ensure the appellant understood the legal distinction between a violation of an order constituting willful disobedience and one that would result only in the offense of breaking restriction. Such an explanation would meet the requirements set forth in *Care* and *Medina* that a military judge conducting a providence inquiry is to ensure that an accused understands how his factual admissions support a finding that he committed a willful disobedience offense in a legal sense as opposed to constituting a violation of breaking restriction.

The precedent set by the majority opinion would render any distinction between breaking restriction and willful disobedience meaningless. This is contrary to the intent of the legislature and President in defining these as two separate offenses with vastly different sentencing implications.

For these reasons, I would set aside appellant's conviction for willful disobedience of a superior commissioned officer as being improvident, but would affirm the remaining findings of guilty and the sentence as adjudged and approved by the convening authority.

6

PHILLIPS—ARMY 20120585

KRAUSS, Judge, concurring in part and dissenting in part:

I join fully with Senior Judge Yob's dissent and offer this separate dissent.

By accepting appellant's plea under Article 90, UCMJ, in this case, the majority effectively endorses the abolition of any meaningful distinction between the offenses of willful disobedience and breaking restriction. The decision conflates the two types of "ultimate offense" situations that arise and exaggerates criminal liability for what has always been understood as a minor offense under Article 134, UCMJ, breaking restriction. In so doing, the majority allows commanders a degree of prosecutorial discretion that undermines the scheme of crime and punishment as defined by Congress and the President under Articles 95 and 134, UCMJ, and runs afoul of an essential corollary to the rule of lenity by favoring the general over the specific criminal provision. Therefore I respectfully dissent.

The facts established by the record are these: On 14 March 2012, appellant received a written counseling statement, originating with and signed by his company commander, restricting appellant to Fort Carson, Colorado. This restriction was imposed as a form of pretrial restraint under Rule for Courts-Martial [hereinafter R.C.M.] 304(a)(2). The government charged appellant with willfully disobeying a lawful command "to be restricted to Fort Carson, Colorado, or words to that effect . . . on or about 11 April 2012," in violation of Article 90, UCMJ. Appellant broke that restriction on the day alleged and admitted to doing so.

Of course, when a soldier breaks restriction he disobeys an order. That disobedience is a minor offense to be prosecuted under Article 134, UCMJ. An order whose sole purpose is to effect pretrial restraint should not be charged under Article 90, UCMJ. *See United States v. Nixon*, 21 U.S.C.M.A. 480, 485, 45 C.M.R. 254, 258 (1972); *United States v. Jessie*, 2 M.J. 573, 575-76 (A.C.M.R. 1977); *see also United States v. Mack,* 65 M.J. 108, 110 (C.A.A.F. 2007); *United States v. Hargrove*, 51 M.J. 408 (C.A.A.F. 1999); *United States v. Haynes,* 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964).

The first two essential elements of proof of the offense of breaking restriction under Article 134, UCMJ, are: "That a certain person ordered the accused to be restricted to certain limits" and "that said person was authorized to order said restriction." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*, 2012], pt. IV, ¶¶ 102.b(1), (2).

"Restriction is the moral restraint of a person imposed by an order directing a person to remain within certain specified limits. 'Restriction' includes restriction under R.C.M. 304(a)(2) . . . ." *MCM*, 2012, pt. IV, ¶ 102.c. "Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits." R.C.M. 304(a)(2). "Any commissioned officer may

7

order pretrial restraint of any enlisted person. . . ." R.C.M. 304(b)(2). This is an authority that "a commanding officer may delegate to warrant, petty, and noncommissioned officers." R.C.M. 304(b)(3). Under "*[p]rocedures for ordering pretrial restraint,*" "[p]retrial restraint other than confinement is imposed by notifying the person orally or in writing of the restraint, including its terms or limits. The order to an enlisted person shall be delivered personally by the authority who issues it or through other persons subject to the code." R.C.M. 304(d).

The discussion to R.C.M. 304 in the *MCM,* 2012, provides that "[b]reach of arrest or restriction in lieu of arrest or violation of conditions on liberty are offenses under the code" and it references paragraphs 16, 19, and 102, of Part IV of the *MCM*, 2012 (i.e., the "Punitive Articles"). R.C.M. 304 discussion. That is Articles 92, 95, and 134, UCMJ. Under paragraph 16 (Article 92, UCMJ, Failure to obey other lawful order), the severe punishment otherwise permitted for failing to obey an order does not apply "if the violation or failure to obey is a breach of restraint imposed as a result of an order. In these instances, the maximum punishment is that specifically prescribed elsewhere for that particular offense." *Manual for Courts-Martial*, *United States* (2008 ed.) [hereinafter *MCM*, 2008], pt. IV, ¶ 16.e(2) (note).[8] In other words, a bad-conduct discharge, total forfeiture of all pay and allowances, and six months confinement is not permitted for violating an order to remain within specified limits imposed as pretrial restraint, but, rather, only one month confinement and forfeiture of two-thirds pay per month for one month is the maximum allowed. *MCM*, 2012, pt. IV, ¶¶ 16.e(2), 102.e.

The discussion and explanations in the *MCM* comport with the scheme of crime and punishment defined by Congress and the President as well as the history and common law of military justice under the UCMJ. Indeed, the 1968 Manual for Courts-Martial explicitly provided that violations of such restriction were punishable as violations of Article 134. *Manual for Courts-Martial*, *United States* (1968 ed.) [hereinafter *MCM*, 1968] ¶ 20b. In reference to footnote 5 of the 1968 *MCM*'s table for Maximum Punishment (still found in the latest table of maximum punishments and found also under pt. IV, ¶ 16.e in the *MCM* applicable in this case) the analysis to the 1968 *MCM* states that:

> (1) If an offense exists without an order being given it falls within fn. 5. Fn. 5 is intended to prevent an increase of punishment for an offense already prescribed

---

[8] It appears that the Note to ¶¶ 16.e(1) and (2) was inadvertently omitted from the 2012 edition of the *Manual for Courts-Martial*. *See* Exec. Order No. 13,468, 73 Fed. Reg. 43827 (28 July 2008); Exec. Order No. 13,552, 75 Fed. Reg. 54263 (3 Sep. 2010); Exec. Order No. 13,593, 76 Fed. Reg. 78451 (16 Dec. 2011); *MCM*, 2012, Appendix 12 (Maximum Punishment Chart).

by the issuance of an order so as to lay the charge under Art. 92.

(2) The limitation for violation of conditions of restraint imposed as a result of an order was added because restraint is always imposed by some type of order and hence is an exception to the first limitation in that punishments for these violations are prescribed elsewhere in the table."

Draft Analysis of Contents, *Manual for Courts-Martial*, 1968 ed., Punitive Articles, Defenses and Punishments, pp. 3-4.[9]

Our superior court has most recently reiterated this principle in *Hargrove,* 51 M.J. 408. The court in *Hargrove* framed the matter as a question of proper charging and proof recognizing that a charge under Article 90 or Article 92, UCMJ, should not be sustained when the offense committed was either breaking restriction or failure to go to one's appointed place of duty, for example. *Id.* at 408*; See also United States v. Henderson*, 44 M.J. 232, 233-34 (C.A.A.F. 1996); c*f. United States v. Quarles,* 1 M.J. 231, 232 (C.M.A. 1975) (Article 92, UCMJ, conviction sustained as long as limited to Article 86, UCMJ—failure to go to appointed place of duty— maximum punishment)*; United States v. Burroughs*, 49 C.M.R. 404, 405 (A.C.M.R. 1974) (affirming Article 90, UCMJ, conviction, but limiting punishment to that under Article 95, UCMJ—resisting apprehension).

The court in *Hargrove* may have contributed some confusion on the matter by declaring in the body of the opinion that "[m]ilitary law has long held that minor offenses may not be escalated in severity by charging them as violations of orders or the willful disobedience of superiors" while including in a footnote reference to the punishment limitation described above and implicitly extending that limit to Article 90 offenses. *Hargrove*, 51 M.J. at 409 n.2.

Indeed, at this court we see cases where military judges accept pleas of guilty under Article 90, UCMJ, only to declare, *sua sponte*, that because the disobedience

---

[9] The Preface of the Analysis of Contents *Manual for Courts-Martial*, 1969, Revised Edition recognizes that it is a replacement for the "unofficial draft analysis of contents, Manual for Courts-Martial United States 1968 . . . which [was] printed in limited quantities and distributed on a special pin point distribution . . . ." Dep't of Army, Pam. 27-2, Analysis of Contents for Courts-Martial, United States 1969, Revised Edition (July 1970) [hereinafter DA Pam. 27-2, 1969]. Nonetheless, the specific language cited above from the 1968 analysis was adopted and incorporated into the officially published 1969 Analysis of the Manual for Courts-Martial, revised edition. DA Pam 27-2, 1969, pp. 25—9 – 25—11 (July 1970).

amounted to nothing other than breaking restriction they would apply the maximum punishment for the latter offense. We have also seen cases where prior to a plea under Article 90, UCMJ, military judges declare that the willful disobedience alleged amounts to breaking restriction, and though then accepting the plea under Article 90, UCMJ, apply the Article 134, UCMJ, maximum for breaking restriction. Nothing significantly distinguishes these cases on the facts. All involve the imposition of a restriction and its breach. The good majority of pleas similar to these are like this case where the military judge and parties are silent as to the apparent issue.[10]

Clarification is worthwhile and the straightforward enforcement of the law as defined is the better approach. When a soldier breaks restriction he should be charged and punished for the offense of breaking restriction. Otherwise, we face what amounts to a continued arbitrary application of a rather dubious sentence limitation to Article 90, UCMJ, convictions.

Turning to the facts of this case, the majority's reliance on *United States v. Landwehr*, 18 M.J. 355 (C.M.A. 1984), is misplaced. The first type of "ultimate offense" situation occurs when a soldier is ordered to fulfill or complete a preexisting duty; for example, an order to report to a certain place for duty when that place of duty had already been defined by previous order; or, in a circumstance such as this, where a commander who has imposed restriction subsequently orders the restricted soldier not to break restriction.[11] It is then that inquiry into whether the officer issuing the order was doing so simply to increase the potential penalty is necessary. *See, e.g., United States v. Pettersen*, 17 M.J. 69 (C.M.A. 1983).

It must also be stated that lack of improper intent on the part of an issuing officer does not resolve the matter against an accused soldier. Whether malicious or innocent, it is improper to escalate the severity of a minor offense by charging it as a

---

[10] These cases include some that are currently pending before this court, as well as others we have recently decided. *See, e.g., United States v. Bartsh,* ARMY 20111104, 2013 WL 6913002 (Army Ct. Crim. App. 31 Dec. 2013); *United States v. Anderson*, ARMY 20120503, 2013 WL 5609356 (Army Ct. Crim. App. 27 Sep. 2013); *United States v. Gillum*, ARMY 20111156, 2012 WL 3150409 (Army Ct. Crim. App. 27 July 2012).

[11] The majority does not rely on appellant's statement during the providence inquiry that he was ordered not to break restriction. There is good reason, appellant was not charged with violating an order not to break restriction and neither the stipulation of fact nor the record as a whole demonstrate such order was rendered. Instead the record establishes that appellant received an order imposing restriction as described above.

more serious offense under these circumstances. *See United States v. Bratcher*, 18 U.S.C.M.A. 125, 39 C.M.R. 125 (1969); *see also United States v. Battle*, 27 M.J. 781 (A.F.C.M.R. 1988).

In any event, we here face the second type of ultimate offense, that involving an order to be restrained in some fashion defined under the UCMJ. *See*, *e.g., Nixon*, 21 U.S.C.M.A. 480, 45 C.M.R. 254. Absent facts to establish that the order imposing restriction amounts to something more than the means by which restraint is imposed, it is improper to affix liability offered under Article 90, UCMJ. *See United States v. Porter,* 11 U.S.C.M.A. 170, 28 C.M.R. 394 (1960); *Nixon,* 21 U.S.C.M.A. 480, 45 C.M.R. 254*; Jessie,* 2 M.J. 573. Here, there is nothing in the record to suggest that appellant's company commander was personally reinforcing a previous order imposing restriction delivered by subordinates or that the commander endeavored to impress upon the appellant that he was not merely imposing restriction, but rather that he was elevating the importance of the order sufficient to appropriately permit prosecution and punishment under Article 90, UCMJ. The fact that legitimate reasons existed to warrant imposition of pretrial restraint does not equate to facts establishing the order imposing restriction with an order properly subject to enforcement under Article 90, UCMJ.

An example of the consequence of the majority opinion is to elevate the offense of breaking restriction over that of the more serious offenses of breach of arrest and escape from pretrial confinement. Each a more restrictive means of pretrial restraint than mere restriction to geographic limits. To take one example, an officer orders a soldier into pretrial confinement. If a soldier disobeys that order and escapes from pretrial confinement he is not properly subject to prosecution and conviction under Article 90, UCMJ. Rather, proper prosecution and punishment lies under Article 95, UCMJ. The maximum punishment permitted for escape from pretrial confinement is one year confinement and a dishonorable discharge. With this decision, the majority effectively endorses a maximum punishment of a dishonorable discharge and five years confinement[12] (death in time of war) for an act significantly less serious than escape from pretrial confinement and patently contrary to the scheme of liability defined by Congress and the President. *MCM*, 2012, pt. IV, ¶ 19, 102, and R.C.M. 304 discussion (signifying the propriety of prosecuting restraint violations under Articles 95 and 134); *see also, United States v. Miller*, 47 M.J. 352, 356-57 (C.A.A.F. 1997).

Finally, recognition of the disagreement between the majority's approach and the UCMJ and *MCM* is also revealed by applying an essential corollary to the rule of lenity requiring enforcement of a specific criminal provision over a general provision in circumstances where both apparently apply. *See Busic v. United States,* 446 U.S. 398, 406 (1980); *United States v. Cotoia*, 785 F.2d 497 (2d Cir. 1986);

---

[12] Both Articles 90 and 95, UCMJ, also authorize total forfeitures.

*United States v. Olinger*, 759 F.2d 1293 (7th Cir. 1985); *See also United States v. LaPorta*, 46 F.3d 152, 156-57 (2d Cir. 1994). The majority's reading of willful disobedience requires nothing more than an intentional violation of restriction that renders breaking restriction, as an offense, essentially superfluous or, at least relegates it to instances of unintentional breach or, perhaps, where a commanding officer has delegated authority to noncommissioned officers to impose restriction. These scenarios are, however, at odds with our practice to this point.[13]

This departure from the rule of law as defined by Congress and the President is neither necessary nor justified. While a commander's prosecutorial discretion and ability to enforce orders with criminal sanction are fundamental, they are limited by the law. The rule of law exists as much as a check upon the authority of those in power as it does as a tool for the enforcement of that authority. Here, appellant's commander imposed pretrial restriction in a routine fashion[14] and appellant broke that restriction as alleged by visiting his girlfriend off post. Because there is nothing in either appellant's admissions or the stipulation of fact to establish that the order issued was anything more or anything other than an order restricting appellant to the limits of Fort Carson, let alone sufficient to establish an intentional defiance of authority rather than a simple breaking restriction, the plea should be rejected. *Hargrove,* 51 M.J. 408; *Bratcher,* 18 U.S.C.M.A. 125, 39 C.M.R. 125.

I concur in the remainder of the majority's opinion.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[13] Statute, executive order, and our common law reinforce the conclusion that the majority's take on willful disobedience guts the historic distinction between a general and the specific crime applicable in this instance in circumstances that warrant enforcement of the specific over the general. *See, e.g.*, *Nixon*, 21 U.S.C.M.A. 480, 45 C.M.R. 254; *Jessie*, 2 M.J. 573; *see also Cotoia*, 785 F.2d 497; *Olinger*, 759 F.2d 1293; *LaPorta*, 46 F.3d 152; *Miller*, 47 M.J. 352; *cf. Bobb v. Attorney General of the United States*, 458 F.3d 213, 224 (3d Cir. 2006).

[14] The majority makes reference to the commander personally conveying the order imposing restriction. However, personal conveyance of such orders is, as in this case, routine. *See, e.g.,* R.C.M. 304(d); *see also*, Army Reg. 27-10, Legal Services: Military Justice, para. 3-19.b(3) (indeed there is little more personal than a commander's imposition of restriction as punishment under Article 15, yet violation of that order is also understood as constituting the offense of breaking restriction); *MCM*, 2012, pt. IV, ¶ 102.c.