UNITED STATES, Appellee

v

CLARENCE O. NIXON, Specialist Four,
U. S. Army, Appellant

21 USCMA 480, 45 CMR 254

Mrs. *Marion M. Cooke* and *Captain David A. Fischer* argued the cause for Appellant, Accused. With them on the brief were *Bernard J. Casey, Esquire, Colonel George J. McCartin, Jr., Lieutenant Colonel Joseph E. Donahue,* and *Captain Libero Marinelli, Jr.*

. *Captain R. Craig Lawrence* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Glenn R. Bonard, Captain David E. Wilson,* and *Captain Richard L. Menson.*

## Opinion of the Court

QUINN, Judge:

The accused was convicted of failing to obey a lawful order (Charge II), willful disobedience of a command by a superior commissioned officer (specification 1, Charge III), biting the same officer, while he was in the execution of his office (specification 2, Charge III), and attempted escape from custody (Charge IV), in violation of Articles 92, 90 and 80, Uniform Code of Military Justice, 10 USC §§ 892, 890, 880, respectively. A panel of the United States Army Court of Military Review affirmed the findings of guilty but modified the sentence to eliminate the bad-conduct discharge. Except as to Charge II, the accused challenges the legality of all the findings of guilty.

Captain Pearl was the accused's company commander. His order to the accused to leave a conference room at battalion headquarters and get into a jeep to be transported to a confinement facility and a later encounter with the accused are the subjects of the specifications of Charge III. At trial, civilian defense counsel acknowledged that the captain "had every right to use physical force to take the accused to the jeep." In the context of counsel's argument, the statement plainly conceded the legality of Captain Pearl's decision to place the accused in pretrial confinement. On this appeal, however, the concession is repudiated.

Two assignments of error, which concern specification 1, Charge III, and Charge IV, are predicated upon a contention that the decision to confine the accused before trial was illegal because the surrounding circumstances demonstrated the likelihood of accused's presence for trial and the minor nature of any misconduct attributed to him before the decision was made. See Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 18*b* and 20*c*. Implicit in the assignments is an assumption that the matter was sufficiently ventilated at trial to provide a complete picture of the facts underlying the decision to confine. In its brief, the Government observes that illegality of the decision "was not suggested at trial nor argued . . . in closing argument," but it has not disputed the importance of the issue to the findings of guilty, and it has based its response to the assignments of error on the evidence. We think it appropriate, therefore, to pass over the preliminary question of waiver to reach the issue on the merits.

Captain Pearl testified that he decided to put the accused into pretrial confinement after discussion of the matter with Lieutenant Colonel Teberg, the battalion commander, and with "the concurrence of the Brigade Commander." He so informed the accused in a conference room at battalion headquarters, and directed him to proceed to a jeep that would take him to the confinement facility. Under

Article 10 of the Uniform Code, a commissioned officer can order an enlisted person into confinement for "probable cause." There is no evidence, and no claim by the accused, that any commander superior to Captain Pearl had imposed special limitations on the exercise of the statutory power. See United States v Jennings, 19 USCMA 88, 41 CMR 88 (1969); United States v West, 12 USCMA 670, 31 CMR 256 (1962). Certain limitations are defined in the Manual for ■ Courts-Martial and supplemental Army regulations. Manual, supra, paragraphs 18*b* and 20*c*; Army Regulation 630-1, September 13, 1962; Army Regulation 190-4, change 2, May 28, 1970. Broadly stated, under the limitations, confinement is authorized to insure accused's presence at trial or to protect the person and property of others from serious harm. See United States v Bayhand, 6 USCMA 762, 765, 21 CMR 84 (1956); United States v Jennings, supra. Appellate defense counsel contend that neither condition obtained at the time Captain Pearl directed that the accused be placed in confinement.

First, we turn to the contention that the decision to confine was based, not on the fact that there was probable cause to believe the accused had committed a crime, but because he was "a material witness." The foundation for the argument appears in the following excerpt from Captain Pearl's testimony on direct examination:

"Q [Trial Counsel] When was the next time you saw the accused?

"A The next time I saw the accused was around 1330. After the incident occurred when he and I had had the interchange by the adjutant's office, I informed the battalion commander of this. He and I discussed the advisability of putting Specialist Nixon in pretrial confinement, since he was a material witness to an incident that happened over the week-end [sic], and it was necessary that he be available. He said, 'Put the man in pretrial confinement if you feel he is not adhering to military law.'

"DC: I object to that as being irrelevant.

"MJ: Sustained."

Plainly, everything but the first sentence of the answer was unresponsive to the question. Consequently, defense counsel's objection was apparently intended to encompass all of the answer but the first sentence. From that standpoint, the reference to the accused as a "material witness to an incident" would not be part of the evidence before us. However, the Government does not challenge the correctness of the answer, and since we can avoid the the necessity for additional argument as to the scope of the objection, we treat the remark as part of the record. United States v Bayhand, supra, page 765. So considered, the remark does not prove the accused's contention that he was ordered into confinement only because he was a material witness.

It is indeed true that the accused was a material witness to a serious incident that happened over the weekend, in which two military policemen were beaten by a group of soldiers, but his role as a witness was not the reason for his confinement. The battalion commander's remark, as reported by Captain Pearl, clearly indicates that the decision to confine was to be based on the accused's conduct in "not adhering to military law." Yet, even if we disregard the admonition as hearsay, or as within the intendment of defense counsel's objection, other testimony demonstrates that the decision to confine was based upon the accused's own misconduct.

Protesting Captain Pearl's order to go to the jeep, the accused asked to speak to someone else. Major Schrader, the battalion adjutant, talked to him. According to Captain Pearl, the major informed the accused of "the same facts and explained . . . what he *had done*" that necessitated his confinement. (Emphasis supplied.) Although the accused testified that he "felt like . . . [he] had no business going to pretrial confinement" because he had not done

"anything," he did not deny that Major Schrader had told him what he had done that was wrong and that justified confinement. The question then is what did the accused do.

On September 12, the accused was involved in an incident with Lieutenant Colainni, who was then the acting company commander. The incident became the subject of a charge of striking a superior officer who was in the execution of his office.[1] The accused was acquitted of this charge, but evidence of record demonstrates that on September 14, the date of confinement, there was probable cause to believe he had committed this offense. Captain Pearl testified that on the morning of the 14th, he informed the accused he was "under restriction." No evidence directly indicates the restriction was imposed as pretrial restraint for this offense, but that fact is so fairly inferable that appellate defense counsel acknowledge that Captain Pearl "placed appellant on restriction for his suspected involvement in that incident." Also, while no direct evidence indicates the area of restriction, testimony as to the order "to return to the unit," which is the subject of Charge II, supports the inference that the restriction was to the company area.[2]

As the accused's involvement with Lieutenant Colainni led only to pretrial restriction, appellate defense counsel perceive that limited restraint as proof that Captain Pearl did not deem the alleged offense sufficiently serious to justify confinement. Their argument, however, disregards the events which took place between the decision to impose restriction and the decision to confine. Events subsequent to imposition of a particular form of restraint can demonstrate that the restraint is either unnecessarily severe or dangerously inadequate. See Reed v Ohman, 19 USCMA 110, 115, 41 CMR 110 (1969); United States v Daniels, 19 USCMA 518, 42 CMR 120 (1970).

What the accused told Captain Pearl when ordered to return to his unit and what he did when he left ■■■■■■ ■ battalion headquarters after receiving the order provided Captain Pearl with good cause to believe that the accused did not obey the order. At that point, Captain Pearl conferred with Lieutenant Colonel Teberg. The situation that now confronted him was not the same as the one that existed when he imposed restriction. At the time of restriction, the accused's record showed him to be an outstanding soldier. His manifest breach of restriction and apparent disobedience of the order to return to the unit made it obvious that his past record could no longer be regarded as a reliable guide to future conduct. Even more important, these offenses necessitated reassessment of his involvement in the Colainni incident. Where his previous record of performance tended to indicate that he might have acted at that time in the interest of public and personal safety, the two new offenses indicated that he could have attacked the lieutenant for improper purposes. Thus, where Captain Pearl might originally have been inclined, because of accused's record, to give him the benefit of any doubt, the two offenses he personally witnessed could reasonably lead him to believe that the Colainni incident was really a step in a deliberate and calculated course of indiscipline. In light of the new offenses, therefore, it was, in our opinion, reasonable for Captain Pearl to conclude that his first assessment of the seriousness of the Colainni incident was wrong and that the nature of the pretrial restraint he originally imposed was inadequate, both from the standpoint of the serious-

---

[1] Lieutenant Colainni was attempting to halt the pummeling of two military policemen by several soldiers who were trying to prevent the policemen from taking a soldier to pretrial confinement.

[2] The accused was convicted of failing to obey this order. The findings of guilty as to this offense are not in issue on this appeal.

ness of that offense and the likelihood of danger to others. We are satisfied, therefore, that his decision to confine the accused pending disposition of the charges was consistent with the Uniform Code and the Manual.

Our conclusion as to the legality of imposition of pretrial confinement leaves unanswered a question as to the nature of Captain Pearl's order directing the accused "to leave the . . . room and get into a jeep," which is the subject of specification 1, Charge III. Although not set out in the specification, it is apparent that the only purpose of the order was to effect custody of the accused to transport him to the confinement facility. Indeed, when the accused later got out of the jeep, his conduct was charged as attempted "escape from . . . lawful custody" (Charge IV), and he stands convicted of that offense. The order was thus the means of effecting accused's apprehension. It was the "initial step in apprehension," and the accused's resistance was resistance to apprehension, not the violation of an independent command. United States v Dutcher, 7 USCMA 439, 442, 22 CMR 229 (1956). A similar situation is present in effecting an arrest and a search, but it has never been suggested in that instance that an order, such as one to open a wall locker or to put one's hands behind one's back so that handcuffs can be affixed, subjects the individual who does not comply to the awesome penalty of death, which in certain circumstances, is the authorized punishment for willful disobedience of the command of a superior officer. See United States v Jordan, 7 USCMA 452, 22 CMR 242 (1957). The usual means of enforcement of an order of the kind indicated is to use "reasonable force" to overcome the resistance. United States v Acosta-Vargas, 13 USCMA 388, 391, 32 CMR 388 (1962); Schmerber v California, 384 US 757, 16 L Ed 2d 908, 86 S Ct 1826 (1966). Of course, there is grave risk of harm to participant and bystander in using force to overcome force, United States v Hendrix, 21 USCMA 412, 45 CMR 186

**484**

(1972), but we cannot imagine that the extreme penalty for willful disobedience to a lawful order is an allowable price to exact of an accused who resists apprehension for such minor offenses as failing to go to his appointed place of duty or being disorderly in barracks. We conclude, therefore, that the trial judge erred in treating specification 1, Charge III, as an offense in violation of Article 90 of the Uniform Code.

The accused's final contention is that the evidence is insufficient to support the findings of guilty of an assault upon Captain Pearl. The underlying premise is that, as a matter of law, the accused acted in self-defense against unreasonable force by Captain Pearl and six or seven other persons in attempting to move him into the jeep. Substantially the same argument was made at trial. The accused testified he was "excited" and felt "pain" from the pressure of a table on his back when Captain Pearl and the others attempted to subdue him. However, he maintained that he did not remember biting the captain, and nothing in his testimony or in the Government's case even suggests that he did so because he believed it was necessary to protect himself from injury. Thus, the argument as to self-defense has little, if any, support in the evidence. United States v Clansey, 7 USCMA 230, 22 CMR 20 (1956). In any event, the evidence does not establish self-defense as a matter of law.

Captain Pearl testified that after the accused had refused both his and Major Schrader's orders to go to the jeep, Lieutenant Colonel Teberg informed the accused that force could be used "to make him go." The accused's reply was: " 'I would like to see you try.' " At Lieutenant Colonel Teberg's direction, Captain Pearl took the accused by the arm, but the accused pulled away. The accused was six feet two inches tall and weighed about 200 pounds. Captain Pearl was a little short, but also weighed about 200 pounds. The captain "took . . .

[the accused] by the arm more firmly and pulled." According to him, he grasped the accused's arms and "pinned" him against a table. As they stood "chest to chest," the accused bit him in the shoulder. According to the captain, the biting occurred "just about . . . [the] time" others were "coming to . . . [his] assistance." With the assistance of six or seven others, the accused was "put . . . on the ground and pinned . . . down." A defense witness testified that the accused continued "struggling for about three minutes." with the captain on top of him, while others tried to tie the accused with rifle slings. Finally, the accused "quit" and said " 'All right, I'll go.' " The accused "stood up and went out to the jeep." On this evidence, the trial judge, as fact finder, could reasonably conclude either that the accused bit the captain before any significant force was applied to his person so that the biting was without justification or excuse, or that the total force applied to the accused by all of the others was not sufficient to justify the kind of force used by the accused.

For the reasons indicated, the decision of the United States Army Court of Military Review is reversed as to specification 1, Charge III, and the sentence. The findings of guilty as to specification 1, Charge III, are set aside and the specification is ordered dismissed. The record of trial is returned to the Judge Advocate General for submission to the court for reassessment of the sentence on the basis of the remaining findings of guilty.

Judge DUNCAN concurs.

DARDEN, Chief Judge (dissenting):

The evidence at trial regarding the reasons for accused's pretrial confinement is scanty and subject to varying interpretations. An objection by the defense counsel to testimony concerning the subject was sustained. As no issue was made below concerning its legality, we must take it to have been authorized on a proper basis. Nevertheless, the circumstances presented suggest that closer attention to the principles of United States v Jennings, 19 USCMA 88, 41 CMR 88 (1969), may have resulted in a decision not to confine the accused and eliminated the unfortunate conditions which gave rise to a number of the offenses charged.

Following the determination by the battalion commander, Lieutenant Colonel Teberg, and his company commander, Captain Pearl, that the accused was to be placed in pretrial confinement, Pearl was directed to bring accused to battalion headquarters.

As Captain Pearl walked out:

". . . Specialist Nixon was coming towards me from Brigade Headquarters, and I asked him to come inside. He came inside and we sat down in the conference room. I informed him that it was my decision to put him in pretrial confinement and why, and I, at that time, gave him an order to get up and proceed to the jeep that was outside with the guard personnel that were going to take him to pretrial confinement. He backed off and said he wouldn't go. I reiterated the fact I had given him a direct order. He refused to go. . . ."

Captain Pearl conferred with Major Schrader, who discussed the matter with the accused and repeated the order to get into the jeep. Accused still refused to comply with the directive. He then confronted Lieutenant Colonel Teberg, engaged in a heated argument, and refused to obey his order to enter the vehicle. As the principal opinion notes, is was only after physical force was employed that accused finally relented and agreed to enter the jeep.

The accused was taken into custody when Captain Pearl directed him to enter battalion headquarters and told him he was to be placed in pretrial confinement. Compare United States v Florence, 1 USCMA 620, 5 CMR 48 (1952), and United States v Dutcher, 7 USCMA 439, 22 CMR 229 (1956), opinion of Judge Latimer. As a prisoner, he had the continuing military duty to obey the legal orders of

his superiors when directed to him. United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388 (1962). Captain Pearl's order was directed, not at reducing accused to custody, but to facilitating his transportation to the stockade where he would enter pretrial confinement. From the context of his testimony, it is obvious that he sought peaceful compliance with his directive by putting the force of his office behind it, a conclusion borne out by Major Schrader's and Lieutenant Colonel Teberg's subsequent orders to the same effect.

In this case we do not confront a situation in which the disobedience could be punished capitally. The accused was subjected to a possible maximum penalty of dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for five years. Moreover, disobedience of orders is a direct attack on the integrity of any military system. Accused's defiance of Captain Pearl's authority amounted to willful disobedience of his order rather than resistance to lawful apprehension.

One may sympathize with the accused's past fine record as well as his having been in an emotional state and, for reasons sufficient to himself, his having felt aggrieved. The military judge expressly took these conditions into consideration in adjudging a sentence to bad-conduct discharge, confinement at hard labor for one year, forfeitures, and reduction, and in recommending that accused either be confined in a Correctional Facility or that his punitive discharge be suspended. These considerations were also known to the Court of Military Review which, in reassessing the sentence, disapproved the punitive discharge. They do not, however, justify disapproval of the adequately supported findings of guilty of willful disobedience of a lawful order.

I would affirm the decision of the Court of Military Review.