**UNITED STATES**

v.

**Specialist Four Patrick J. MALIA, 332–50–4797, US Army, Headquarters and Headquarters Company, 1st Battalion (Mechanized), 22d Infantry, 4th Infantry Division (Mechanized), Fort Carson, Colorado.**

**CM 434174.**

U. S. Army Court of Military Review.

Sentence Adjudged 7 Oct. 1975.

Decided 31 Aug. 1976.

---

OPINION OF THE COURT

COSTELLO, Judge:

Appellant was convicted, contrary to his pleas, of aggravated assault, and of obstruction of justice and communicating a threat in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928 and 934, respectively. His approved sentence is set out above.

At issue is the lawfulness of appellant's pretrial confinement which had an irregular course. Appellant was first confined on 11 August 1975 by order of his Brigade Commander, Colonel Nichols. Four days later, Captain Cheatham, the Military Magistrate at Fort Carson, began his evaluation of the appropriateness of the appellant's continued confinement in accordance with the Post's Military Magistrate Program. Captain Cheatham testified at trial that the appellant had made a favorable impression and that he was inclined to release him from confinement. However, it had also come to his attention that the appellant may have threatened the alleged victim to deter him from testifying as a witness in another trial. Consequently, Captain Cheatham decided to await the completion of the Article 32 investigation before making a decision.

Captain Cheatham contacted the investigator who stated that he recalled nothing at the hearing concerning any such incident. Based on this information, Captain Cheatham released the appellant from confinement on 26 August 1975.

Soon thereafter, Colonel Nichols was informed of the Magistrate's action. He signed a confinement order without consulting the Military Magistrate, and appellant was returned to pretrial confinement on 27 August 1975.[1]

On 2 September 1975, Colonel Nichols, Captain Cheatham and others held a meeting to discuss the pretrial status of appellant. Captain Cheatham entered the meet-

Appellate Counsel for the Accused: CPT R. Stuart Broom, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Nancy M. Giorno, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

1. There is some confusion in the record about this date; it might have been the 28th. However, appellate defense counsel agree that it was the 27th.

ing fully intending to inform Colonel Nichols that he was going to release the appellant. At the meeting, Colonel Nichols disclosed reasons for reconfining the appellant which Captain Cheatham had not been made aware of at the time he released appellant from pretrial confinement. As a result, Captain Cheatham changed his mind and decided against releasing the appellant. He communicated that decision to appellant personally on the same day.

At trial, defense counsel moved unsuccessfully for dismissal of the charges on the basis of illegal confinement or, in the alternative, release from confinement. Consequently, the appellant remained in confinement throughout his trial which ended 7 October 1975.

Before us, appellant contends that his initial confinement was for an improper purpose and, therefore, unlawful. He further asserts that a similar error occurred when Colonel Nichols ordered his reconfinement on 27 August and that that reconfinement was also illegal because done in violation of local regulations establishing the powers of Military Magistrates. The problems presented by this case are of the kind which can be avoided by improved administration, but they do not present any error.

## I

■ The initial confinement was quite lawful. Appellant was charged with three offenses involving violence, the most serious of which alone permitted punishment including confinement at hard labor for five years. Thus, the offenses were sufficiently serious to warrant confinement and to call into question the likelihood that appellant would appear for trial. Paragraph 20c, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev.)). *United States v. Bayhand*, 6 U.S.C.M.A. 762, 21 C.M.R. 84 (1956). Secondly, the confining authority was aware that appellant's liberty raised a threat to the physical safety of other members of the command. That consideration may also bottom a decision to confine. *United States v. Nixon*, 21

U.S.C.M.A. 480, 45 C.M.R. 254 (1972), *citing Bayhand, supra* and *United States v. Jennings*, 19 U.S.C.M.A. 88, 41 C.M.R. 88 (1969). More specifically, the allegations against this appellant included a charge of obstructing justice by those same threats. Threats against a government witness justify denial of bail in federal practice. *Carbo v. United States*, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (Memo.Op.); *Gavino v. MacMahon*, 499 F.2d 1191 (2nd Cir. 1974). In this context, a military decision to impose restraint is the equivalent of a civilian decision to deny release.

These basic considerations were all known to and given effect by Colonel Nichols, the officer who ordered appellant into confinement. Colonel Nichols had taken authority to confine away from his subordinates, so the contrary opinion of the company commander mentioned by appellate counsel is irrelevant. Equally so is the assertion that Colonel Nichols had a wrong reason for his decision. It is clear from the record that Colonel Nichols was primarily concerned with the threat to other persons which would flow from not restraining appellant. However, we find that he was also aware of the other legal predicates for pretrial confinement. His emphasis on the threat only reflects the differences among reasonable men; it does not create legal error, particularly where the emphasis is on a reason which is itself sufficient to justify restraint. *Nixon, supra*. Consequently, we hold that appellant's initial incarceration was for proper purposes and lawful.

## II

■ That holding disposes of appellant's first attack on his reconfinement after having been released by the Military Magistrate. The basic purposes were, again, lawful. However, the reconfinement by Colonel Nichols was at variance with the command regulation on the Military Magistrate Program at two points. First, the only stated basis for reconfinement was the commission of additional offenses and, secondly,

the commanding general stated in the regulation that there was to be no appeal from a magistrate's decision and that he would not overrule a magistrate's decision to release a confinee. Without bandying words, we accept those restraints as limitations on the power of his subordinates. *Jennings, supra; United States v. Gray*, 6 U.S.C.M.A. 615, 20 C.M.R. 331 (1956). A subordinate's action beyond established limitations on his general power to confine results in unlawful confinement. *United States v. White*, 17 U.S. C.M.A. 211, 38 C.M.R. 9 (1967); *Gray, supra*.

■ The restrictions noted above are contained in a Fort Carson Supplement to AR 27–10, dated 6 February 1975. That Supplement is more restrictive than its parent which, at paragraph 16–4d, permits reconfinement of released prisoners ". . . upon the commission of another offense *or upon receipt of newly discovered information.*" AR 27–10, dated 9 September 1974. [Emphasis supplied.] We assume that a senior commander who may restrict further the statutory power of his subordinates to confine may also add to the restrictions imposed by Army-wide regulations. Such are the products of hierarchical, authoritative organizations.

■ In the pleadings before us, the government relied on a "Standing Operating Procedure: Fort Carson Military Magistrate Program" which contains language about reconfinement equivalent to that in AR 27–10 and broader than the Fort Carson Supplement thereto. Although introduced at trial, the "SOP" is but a command letter and its relation to the Fort Carson Supplement is unexplained. Further, the facts on which Colonel Nichols based his reconfinement order were not "newly discovered" as to him, although they were still unknown to the magistrate. Thus, we hold that Colonel Nichols lacked authority to issue the reconfinement order of 27 August and that appellant was unlawfully imprisoned on that date.[2]

## III

■ This leaves only the question whether the magistrate's agreement on 2 September that pretrial confinement was indeed warranted somehow breathed legitimacy into appellant's status. That agreement was the product of the meeting at which Colonel Nichols made him aware of facts which, the magistrate said, would have caused him to authorize continued confinement had he known them on 26 August. Following that meeting, the magistrate went to the jail and told appellant that he was being retained in confinement and why. That action was, in legal effect though not in words, a recission of his release order of 26 August. Judicial authorities generally may reconsider their decisions *sua sponte* or on motion. Specific authority for federal judicial officers (commissioners and magistrates) to reconsider decisions about pretrial release is contained in Title 18 U.S.C. §§ 3143 and 3146e. We do not suggest that the federal act is applicable to military magistrates. However, they are judicial officers, *see* Chapter 16, AR 27–10, *supra*, and the statute cited demonstrates that there is no general policy objection to reconsideration of the subject involved here. *See also Bitter v. United States*, 389 U.S. 15, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967) and *Russell v. United States*, 131 U.S.App.D.C. 44, 402 F.2d 185 (1968).

There were sound reasons for the reconsideration undertaken by the magistrate below so we approve both the manner and substance of his acting, given the circumstances. As noted, the purported reconfinement was a nullity, so the effect of the magistrate's action was to establish a continuum of pretrial confinement from its initiation on 11 August. In this view appellant could suffer no injury from the abortive action of the Brigade Commander, and we find that he did not.

---

2. Trial testimony to the effect that this action was "discussed with the Judge Advocate General's office [sic]," does not alter this result.

The Staff Judge Advocate had no power to vary the terms of the regulation as to the Magistrate Program.

## IV

■ Appellant was not given a copy of the record of trial until after the convening authority had acted. However, his defense counsel received the authenticated record on 31 October 1975 and declined comment on the SJA review on 17 December 1975. We cannot determine that the requirements of *United States v. Cruz-Rijos*, 1 M.J. 429 (June 25, 1976) were satisfied. However, assuming error, we find no prejudice. *See United States v. O'Connell*, 2 M.J. 933 (A.C.M.R. 16 July 1976).

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge DO-NAHUE concur.