## UNITED STATES

v.

**Jeffrey L. TRIMBLE, 430 25 1559, Boiler Technician Fireman (E–3), U.S. Navy.**

**NMCM 89 3698.**

U.S. Navy–Marine Corps Court of Military Review.

Sentenced Adjudged 16 Aug. 1989.

Decided 17 Jan. 1990.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LT Stephen H. Johnson, JAGC, USNR-R, Appellate Defense Counsel.

CDR P.J. McLaughlin, JAGC, USN, Appellate Government Counsel.

Before BYRNE, C.J., and FREYER and STRICKLAND, JJ.

PER CURIAM:

Twenty minutes after illegally departing his ship and resisting apprehension by the

**1134**

pier sentry, the appellant encountered an officer from his ship in the vicinity of the station laundry. From the providency inquiry, it appears that the officer ordered the appellant to return to the ship with him, seized the appellant by the arm, and told a petty officer, who had stepped out of the laundry, to come and apprehend him. The appellant responded to the officer's grabbing of his arm by brushing the officer's arm off so as to liberate himself. This action resulted in a charge of striking a commissioned officer in the execution of his office. Although the *Care*[1] inquiry relative to the order violation is quite sufficient to support the plea when considered in isolation, the *Care* inquiry relative to the charge of striking a commissioned officer raises the issue of whether the order to "return to the ship with me," followed by the grabbing of the appellant's arm, was merely a step in apprehending him for being absent without leave and having resisted apprehension by the pier sentry, *see United States v. Nixon*, 21 U.S.C.M.A. 480, 45 C.M.R. 254 (1972), or whether it was an independent order which was disobeyed, followed by an apprehension for disobedience of the order.

▮ When charges are unrelated, a *Care* inquiry addressing each charge individually is normally most appropriate; but, when charges arising from a single incident are multiplied, as they were in this case, the *Care* inquiry often must be fashioned to include an overview of the entire incident so as to elucidate any relationships that may exist among component events. The *Care* inquiry in this case does not reveal how much, if any, time elapsed between the order and the grabbing of the appellant's arm, nor does it contain an admission by the appellant regarding the purpose of the order. *See United States v. Anderson*, 1 M.J. 246 (C.M.A.1976). In the usual case of an order violation, such a line of questioning would rarely be necessary; having conscientiously raised a *Nixon* issue in this case, however, the military judge became obliged to settle it one way or the other. We, therefore, set aside the finding of guilty of, and dismiss, Specification 1 of

Charge II; we affirm the remaining findings of guilty.

▮ During the presentencing proceedings, the prosecution called the chief engineer of the appellant's ship as a witness in aggravation and for evidence of lack of rehabilitative potential. This witness was allowed to expound in narrative form for as long as all but three lines of a single-spaced page without objection. This uninterrupted monologue and subsequent responses, all on direct examination, contained such unflattering descriptions as:

> He has been very elusive, he's been hard to find at times.

> He's been, as I mentioned, elusive; he's had excuses why he could not do things; when the entire department was working till 18, 19, 2000, Trimble had a reason to be off at 1600 every day. His—I feel at times he has deceived us to the point where I would—my comment would be that he lied to us on several occasions to get out of work to avoid the extra effort required to get the department going and to achieve a satisfactory grade for the OPPE.

> We allowed him special liberty on occasion; we gave in to him. We got nothing in return for all the time and effort that we put into him. We gave in and he took and refused to repay us.

We perceive no possible tactical advantage to the defense from this testimony, which can be classified as neither "aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty" nor "evidence, *in the form of opinions* concerning the accused's previous performance as a servicemember and potential for rehabilitation." Rule for Courts–Martial (R.C.M.) 1001(b)(4), (5), Manual for Courts–Martial, United States, 1984. (Emphasis supplied.) Although the primary responsibility for objecting to it rested with the defense counsel, we deem it plain error for the military judge to have allowed such a continuing and egregious violation of R.C.M. 1001(b) to proceed without ensuring that the par-

1. 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

ties were aware of the legal and ethical significance of what was occurring.

Our action leaves the appellant convicted of unlawfully striking a superior commissioned officer and a superior petty officer, each in the execution of his office, willfully disobeying the order of a petty officer, resisting apprehension, and wrongfully using cocaine. At the same time, we note that his offenses occurred while he was on terminal leave after performing reasonably well for more than four years, albeit incurring six nonjudicial punishments. Reassessing the sentence in light of the principles enunciated in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we affirm only so much of the sentence as provides for reduction to pay grade E–1, confinement for two months, and a bad-conduct discharge.