KRAUSS, Judge,
concurring in part and dissenting in part:
I join fully with Senior Judge Yob’s dissent and offer this separate dissent.
By accepting appellant’s plea under Article 90, UCMJ, in this ease, the majority effectively endorses the abolition of any meaningful distinction between the offenses of willful disobedience and breaking restriction. The decision conflates the two types of “ultimate offense” situations that arise and exaggerates criminal liability for what has always been understood as a minor offense under Article 134, UCMJ, breaking restriction. In so doing, the majority allows commanders a degree of prosecutorial discretion that undermines the scheme of crime and punishment as defined by Congress and the President under Articles 95 and 134, UCMJ, and runs afoul of an essential corollary to 'the rule of lenity by favoring the general over the specific criminal provision. Therefore I respectfully dissent.
The facts established by the record are these: On 14 March 2012, appellant received a written counseling statement, originating with and signed by his company commander, restricting appellant to Fort Carson, Colorado. This restriction was imposed as a form of pretrial restraint under Rule for Courts-Martial [hereinafter R.C.M.] 304(a)(2). The government charged appellant with willfully disobeying a lawful command “to be restricted to Fort Carson, Colorado, or words to that effect ... on or about 11 April 2012,” in violation of Article 90, UCMJ. Appellant broke that restriction on the day alleged and admitted to doing so.
Of course, when a soldier breaks restriction he disobeys an order. That disobedience is a minor offense to be prosecuted under Article 134, UCMJ. An order whose sole purpose is to effect pretrial restraint should not be charged under Article 90, UCMJ. See United States v. Nixon, 21 USCMA 480, 485, 45 C.M.R. 254, 258 (1972); United States v. Jessie, 2 M.J. 573, 575-76 (A.C.M.R.1977); see also United States v. Mack, 65 M.J. 108, 110 (C.A.A.F.2007); United States v. Hargrove, 51 M.J. 408 (C.A.A.F.1999); United States v. Haynes, 15 USCMA 122, 35 C.M.R. 94 (1964).
The first two essential elements of proof of the offense of breaking restriction under Article 134, UCMJ, are: “That a certain person ordered the accused to be restricted to certain limits” and “that said person was authorized to order said restriction.” Manual for Courts-Martial, United States (2012 ed.) [hereinafter MCM, 2012], pt. IV, ¶¶ 102.b(1), (2).
“Restriction is the moral restraint of a person imposed by an order directing a person to remain within certain specified limits. ‘Restriction’ includes restriction under R.C.M. 304(a)(2)....” MCM, 2012, pt. IV, ¶ 102.C. “Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits.” R.C.M. 304(a)(2). “Any commissioned officer may order pretrial restraint of any enlisted person_” R.C.M. 304(b)(2). This is an authority that “a commanding officer may delegate to warrant, petty, and noncommissioned officers.” R.C.M. 304(b)(3). Under “[procedures for ordering pretrial restraint,” “[p]retrial restraint other than confinement is imposed by notifying the person orally or in writing of the restraint, including its terms or limits. The order to an enlisted person shall be delivered personally by the authority who issues it or through other persons subject to the code.” R.C.M. 304(d). ,
The discussion to R.C.M. 304 in the MCM, 2012, provides that “[b]reach of arrest or *577 restriction in lieu of arrest or violation of conditions on liberty are offenses under the code” and it references paragraphs 16, 19, and 102, of Part IV of the MCM, 2012 (i.e., the “Punitive Articles”). R.C.M. 304 discussion. That is Articles 92, 96, and 134, UCMJ. Under paragraph 16 (Article 92, UCMJ, Failure to obey other lawful order), the severe punishment otherwise permitted for failing to obey an order does not apply “if the violation or failure to obey is a breach of restraint imposed as a result of an order. In these instances, the maximum punishment is that specifically prescribed elsewhere for that particular offense.” Manual for Courts-Martial, United States (2008 ed.) [hereinafter MCM, 2008], pt. IV, H16.e(2) (note).[8] In other words, ¿ bad-conduct discharge, total forfeiture of all pay and allowances, and six months confinement is not permitted for violating an order to remain within specified limits imposed as pretrial restraint, but, rather, only one month confinement and forfeiture of two-thirds pay per month for one month is the maximum allowed. MCM, 2012, pt. IV, ¶¶ 16.e(2), 102.e.
The discussion and explanations in the MCM comport with the scheme of crime and punishment defined by Congress and the President as well as the history and common law of military justice under the UCMJ. Indeed, the 1968 Manual for Courts-Martial explicitly provided that violations of such restriction were punishable as violations of Article 134. Manual for Courts-Martial, United States (1968 ed.) [hereinafter MCM, 1968] ¶ 20b. In reference to footnote 5 of the 1968 MCM’s table for Maximum Punishment (still found in the latest table of maximum punishments and found also under pt. IV, ¶ 16. e in the MCM applicable in this ease) the analysis to the 1968 MCM states that:
(1) If an offense exists without an order being given it falls within fn. 5. Fn. 5 is intended to prevent an increase of punishment for an offense already prescribed by the issuance of an order so as to lay the charge under Art. 92.
(2) The limitation for violation of conditions of restraint imposed as a result of an order was added because restraint is always imposed by some type of order and hence is an exception to the first limitation in that punishments for these violations are prescribed elsewhere in the table.”
Draft Analysis of Contents, Manual for Courts-Martial, 1968 ed., Punitive Articles, Defenses and Punishments, pp. 3^4.[9]
Our superior court has most recently reiterated this principle in Hargrove, 51 M.J. 408. The court in Hargrove framed the matter as a question of proper charging and proof recognizing that a charge under Article 90 or Article 92, UCMJ, should not be sustained when the offense committed was either breaking restriction or failure to go to one’s appointed place of duty, for example. Id. at 408; See also United States v. Henderson, 44 M.J. 232, 233-34 (C.A.A.F.1996); cf. United States v. Quarles, 1 M.J. 231, 232 (C.M.A.1975) (Article 92, UCMJ, conviction sustained as long as limited to Article 86, UCMJ — failure to go to appointed place of duty — maximum punishment); United States v. Burroughs, 49 C.M.R. 404, 405 (A.C.M.R.1974) (affirming Article 90, UCMJ, conviction, but limiting punishment to that under Article 95, UCMJ — resisting apprehension).
The court in Hargrove may have contributed some confusion on the matter by declaring in the body of the opinion that “[m]ilitary law *578 has long held that m i nor offenses may not be escalated in severity by charging them as violations of orders or the willful disobedience of superiors” while including in a footnote reference to the punishment limitation described above and implicitly extending that limit to Article 90 offenses. Hargrove, 51 M.J. at 409 n. 2.
Indeed, at this court we see eases where military judges accept pleas of guilty under Article 90, UCMJ, only to declare, sua sponte, that because the disobedience amounted to nothing other than breaking restriction they would apply the maximum punishment for the latter offense. We have also seen eases where prior to a plea under Article 90,. UCMJ, military judges declare that the willful disobedience alleged amounts to breaking restriction, and though then accepting the plea under Article 90, UCMJ, apply the Article 134, UCMJ, maximum for breaking restriction. Nothing significantly distinguishes these eases on the facts. All involve the imposition of a restriction and its breach. The good majority of pleas similar to these are like this case where the military judge and parties are silent as to the apparent issue.[10]
Clarification is worthwhile and the straightforward enforcement of the law as defined is the better approach. When a soldier breaks restriction he should be charged and punished for the offense of breaking restriction. Otherwise, we face what amounts to a continued arbitrary application of a rather dubious sentence limitation to Article 90, UCMJ, convictions.
Turning to the facts of this case, the majority’s reliance on United States v. Landwehr, 18 M.J. 355 (C.M.A.1984), is misplaced. The first type of “ultimate offense” situation occurs when a soldier is ordered to fulfill or complete a preexisting duty; for example, an order to report to a certain place for duty when that place of duty had already been defined by previous order; or, in a circumstance such as this, where a commander who has imposed restriction subsequently orders the restricted soldier not to break restriction.[11] It is then that inquiry into whether the officer issuing the order was doing so simply to increase the potential penalty is necessary. See, e.g., United States v. Pettersen, 17 M.J. 69 (C.M.A.1983).
It must also be stated that lack of improper intent on the part of an issuing officer does not resolve the matter against an accused soldier. Whether malicious or innocent, it is improper to escalate the severity of a minor offense by charging it as a more serious offense under these circumstances. See United States v. Bratcher, 18 USCMA 125, 39 C.M.R. 125 (1969); see also United States v. Battle, 27 M.J. 781 (A.F.C.M.R.1988).
In any event, we here face the second type of ultimate offense, that involving an order to be restrained in some fashion defined under the UCMJ. See, e.g., Nixon, 21 USCMA 480, 45 C.M.R. 254. Absent facts to establish that the order imposing restriction amounts to something more than the means by which restraint is imposed, it is improper to affix liability offered under Article 90, UCMJ. See United States v. Porter, 11 USCMA 170, 28 C.M.R. 394 (1960); Nixon, 21 USCMA 480, 45 C.M.R. 254; Jessie, 2 M.J. 573. Here, there is nothing in the record to suggest that appellant’s company commander was personally reinforcing a previous order imposing restriction delivered by subordinates or that the commander endeavored to impress upon the appellant that he was not merely imposing restriction, but rather that he was elevating the importance of the order sufficient to appropriately permit prosecution and punish *579 ment under Article 90, UCMJ. The fact that legitimate reasons existed to warrant imposition of pretrial restraint does not equate to facts establishing the order imposing restriction with an order properly subject to enforcement under Article 90, UCMJ.
An example of the consequence of the majority opinion is to elevate the offense of breaking restriction over that of the more serious offenses of breach of arrest and escape from pretrial confinement. Each a more restrictive means of pretrial restraint than mere restriction to geographic limits. To take one example, an officer orders a soldier into pretrial confinement. If a soldier disobeys that order and escapes from pretrial confinement he is not properly subject to prosecution and conviction under Article 90, UCMJ. Rather, proper prosecution and punishment lies under Article 95, UCMJ. The maximum punishment permitted for escape from pretrial confinement is one year confinement and a dishonorable discharge. With this decision, the majority effectively endorses a maximum punishment of a dishonorable discharge and five years confinement[12] (death in time of war) for an act significantly less serious than escape from pretrial confinement and patently contrary to the scheme of liability defined by Congress and the President. MCM, 2012, pt. IV, ¶ 19, 102, and R.C.M. 304 discussion (signifying the propriety of prosecuting restraint violations under Articles 95 and 134); see also, United States v. Miller, 47 M.J. 352, 356-57 (C.A.A.F.1997).
Finally, recognition of the disagreement between the majority’s approach and the UCMJ and MCM is also revealed by applying an essential corollary to the rule of lenity requiring enforcement of a specific criminal provision over a general provision in circumstances where both apparently apply. See Busic v. United States, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); United States v. Cotoia, 785 F.2d 497 (2d Cir.1986); United States v. Olinger, 759 F.2d 1293 (7th Cir.1985); See also United States v. LaPorta, 46 F.3d 152, 156-57 (2d Cir.1994). The majority’s reading of willful disobedience requires nothing more than an intentional violation of restriction that renders breaking restriction, as an offense, essentially superfluous or, at least relegates it to instances of unintentional breach or, perhaps, where a commanding officer has delegated authority to noncommissioned officers to impose restriction. These scenarios are, however, at odds with our practice to this point.[13]
This departure from the rule of law as defined by Congress and the President is neither necessary nor justified. While a commander’s prosecutorial discretion and ability to enforce orders with criminal sanction are fundamental, they are limited by the law. The rule of law exists as much as a check upon the authority of those in power as it does as a tool for the enforcement of that authority. Here, appellant’s commander imposed pretrial restriction in a routine fashion [14] and appellant broke that restriction as alleged by visiting his girlfriend off post. Because there is nothing in either appellant’s admissions or the stipulation of fact to establish that the order issued was anything more or anything other than an order restricting appellant to the limits of Fort Carson, let *580 alone sufficient to establish an intentional defiance of authority rather than a simple breaking restriction, the plea should be rejected. Hargrove, 51 M.J. 408; Bratcher, 18 USCMA 125, 39 C.M.R. 125.
I concur in the remainder of the majority’s opinion.

. It appears that the Note to ¶¶ 16.e(l) and (2) was inadvertently omitted from the 2012 edition of the Manual for Courts-Martial. See Exec. Order No. 13,468, 73 Fed.Reg. 43827 (28 July 2008); Exec. Order No. 13,552, 75 Fed.Reg. 54263 (3 Sep. 2010); Exec. Order No. 13,593, 76 Fed.Reg. 78451 (16 Dec. 2011); MCM, 2012, Appendix 12 (Maximum Punishment Chart).

. The Preface of the Analysis of Contents Manual for Courts-Martial, 1969, Revised Edition recognizes that it is a replacement for the “unofficial draft analysis of contents, Manual for Courts-Martial United States 1968... which [was] printed in limited quantities and distributed on a special pin point distribution...." Dep’t of Army, Pam. 27-2, Analysis of Contents for Courts-Martial, United States 1969, Revised Edition (My 1970) [hereinafter DA Pam. 27-2, 1969]. Nonetheless, the specific language cited above from the 1968 analysis was adopted and incorporated into the officially published 1969 Analysis of the Manual for Courts-Martial, revised edition. DA Pam 27-2, 1969, pp.25-9-25-11 (My 1970).

. These cases include some that are currently pending before this court, as well as others we have recently decided. See, e.g., United States v. Bartsh, ARMY 20111104, 2013 WL 6913002 (Army Ct.Crim.App. 31 Dec. 2013); United States v. Anderson, ARMY 20120503, 2013 WL 5609356 (Army Ct.Crim.App. 27 Sep. 2013); United States v. Gillum, ARMY 20111156, 2012 WL 3150409 (Army Ct.Crim.App. 27 July 2012).

. The majority does not rely on appellant's statement during the providence inquiry that he was ordered not to break restriction. There is good reason, appellant was not charged with violating an order not to break restriction and neither the stipulation of fact nor the record as a whole demonstrate such order was rendered. Instead the record establishes that appellant received an order imposing restriction as described above.

. Both Articles 90 and 95, UCMJ, also authorize total forfeitures.

. Statute, executive order, and our common law reinforce the conclusion that the majority’s take on willful disobedience guts the historic distinction between a general and the specific crime applicable in this instance in circumstances that warrant enforcement of the specific over the general. See, e.g., Nixon, 21 USCMA 480, 45 C.M.R. 254; Jessie, 2 M.J. 573; see also Cotoia, 785 F.2d 497; Olinger, 759 F.2d 1293; LaPorta, 46 F.3d 152; Miller, 47 M.J. 352; cf. Bobb v. Attorney General of the United States, 458 F.3d 213, 224 (3d Cir.2006).

.The majority makes reference to the commander personally conveying the order imposing restriction. However, personal conveyance of such orders is, as in this case, routine. See, e.g., R.C.M. 304(d); see also, Army Reg. 27-10, Legal Services: Military Justice, para. 3 — 19.b(3) (indeed there is little more personal than a commander’s imposition of restriction as punishment under Article 15, yet violation of that order is also understood as constituting the offense of breaking restriction); MCM, 2012, pt. IV, ¶ 102.C.