# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Specialist MARTIN L. CARROLL, JR.**
**United States Army, Appellant**

ARMY 20111158

Headquarters, III Corps and Fort Hood
Patricia H. Lewis, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain J. Fred Ingram, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Major Elisabeth A. Claus, JA; Major Kenneth W. Borgnino, JA; Captain Ryan D. Pyles, JA (on brief).

28 February 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of willfully disobeying a superior commissioned officer; making a false official statement; wrongfully using a controlled substance; larceny; forgery; uttering checks without sufficient funds (two specifications); and housebreaking in violation of Articles 90, 107, 112a, 121, 123, 123a, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 907, 912a, 921, 923, 923a, and 930 [hereinafter UCMJ] (2006). The military judge sentenced appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only eighteen months of confinement and the remainder of the adjudged sentence. The convening authority also credited appellant with ninety-six days of confinement credit.

CARROLL—ARMY 20111158

Appellant's case is pending review before this court pursuant to Article 66, UCMJ. Appellant raises three assignments of error, only one of which merits discussion, but no relief.[1] Appellant alleges the military judge abused her discretion by accepting appellant's guilty plea to willfully disobeying a superior commissioned officer because appellant's crime is really the offense of breaking restriction under Article 134, UCMJ (commonly referred to as the "ultimate offense" doctrine). Appellant notes that the offense of willfully disobeying a superior commissioned officer carries a maximum sentence that includes a dishonorable discharge, confinement for five years, and forfeiture of all pay and allowances, whereas the maximum sentence for breaking restriction carries no punitive discharge and includes only one month of confinement and forfeiture of two-thirds pay for one month. *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶¶ 14.e(2), 102.e. Citing to *United States v. Hargrove*, 51 M.J. 408 (C.A.A.F. 1999), appellant argues the government should not have been allowed to escalate the severity of appellant's offense by charging it as a disobedience of a superior commissioned officer in violation of Article 90, UCMJ instead of breaking restriction under Article 134, UCMJ.

During the trial, the defense raised an issue concerning the appropriate punishment for the Article 90, UCMJ, offense. The military judge, referring to *Hargrove*, resolved the issue by going forward with the guilty plea to willful disobedience under Article 90, UCMJ, but then applying the maximum punishment for breaking restriction under Article 134, UCMJ. Appellant now argues on appeal that the military judge correctly identified a problem, but her resolution was in error and improperly left appellant convicted of Article 90, UCMJ, instead of breaking restriction under Article 134, UCMJ. Moreover, because breaking restriction is not a lesser included offense of Article 90, UCMJ, appellant urges this court to set aside and dismiss the Article 90, UCMJ, charge and specification.

Upon our review of the record, we find the military judge erred, but not as appellant suggests. The providence inquiry and stipulation of fact confirm the elements of willful disobedience of a superior commissioned officer were met.[2]

---

[1] We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

[2] Although the military judge's inquiry could have been more pointed, we specifically found a factual underpinning to establish appellant's conduct was an "intentional defiance of authority." *See MCM*, pt. IV, ¶ 14.c(2)(f). Appellant's own words during the providence inquiry included admission that he disobeyed the order on more than one occasion because he "didn't feel like it was right to be restricted to

(continued . . .)

2

During the providence inquiry, appellant admitted that his company commander personally gave appellant an order restricting him to the installation as a result of "instances where I was getting in trouble." The record also reveals appellant had a prior history of being absent without leave. Appellant understood the restriction to be a lawful order, but nonetheless left the installation on more than one occasion in admitted willful defiance of the order. Moreover, there is no indication that this order was given to escalate the criminal liability of appellant. *See United States v. Landwehr*, 18 M.J. 355, 356-57 (C.M.A. 1984) ("[A]n order given solely for the purpose of increasing the punishment for not performing a pre-existing duty should not be made the grounds of an Article 90 violation . . . ."). We reiterate our recent holding in *United States v. Phillips*, __ M.J. __ (Army Ct. Crim. App. 31 Jan. 2014), that if the elements are met for willful disobedience under Article 90, UCMJ, there is no requirement the offense be charged as breaking restriction under Article 134, UCMJ, nor is there a requirement during the providence inquiry to distinguish between those two offenses. Therefore, we find the military judge only erred in this case by limiting the maximum punishment assigned to the Article 90, UCMJ, offense.[3] However, since this error inured to the benefit of appellant, it was harmless. *See* UCMJ art. 59(a).

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

---

(. . . continued)

post and stuff." Thus, his misconduct is distinguished from a mere failure to obey under Article 92, UCMJ, in which intentional defiance is not required.

[3] *See Landwehr*, 18 M.J. at 356 ("Congress delegated to the President the power to prescribe the maximum punishments for violations of the Uniform Code, and such delegation includes the power to set limits on those punishments. [The note] specifically applies only to Article 92 violations, and we have no power to extend it to violations of other Articles of the Code."). The note is found in part IV, paragraph 16.e(1)(2) of the *Manual for Courts-Martial* (2008 ed.). The note does not appear in the *Manual for Courts-Martial* (2012 ed.). However, as the President has taken no action to repeal it, we view this as a typographical error in the printing of the *Manual for Courts-Martial* (2012 ed.). *See* Exec. Order No. 12,473, 49 Fed. Reg. 17152 (Apr. 13, 1984); Exec. Order No. 12,550, 51 Fed. Reg. 6497 (Feb. 19, 1986); Exec. Order No. 13,387, 70 Fed. Reg. 60697 (Oct. 14, 2005).

KRAUSS, Judge, concurring in part and dissenting in part:

I dissent from the majority opinion based on my dissenting opinion in *United States v. Phillips*, __ M.J. __ (Army Ct. Crim. App. 31 Jan. 2014). The majority's continued conflation of the two types of situations involving the ultimate offense doctrine[1] invites commanders to transform a breaking restriction offense under Article 134, UCMJ, into an offense under Article 90, UCMJ, by simply issuing an order imposing restriction in the fashion required and expected by law and our rules. This is exactly the sort of evil that application of the ultimate offense doctrine prevents.[2] *See United States v. Nixon*, 21 U.S.C.M.A. 480, 484, 45 C.M.R. 254, 258 (1972); *United States v. Jessie*, 2 M.J. 573, 575–76 (A.C.M.R. 1977); *United States v. Mack,* 65 M.J. 108, 110 (C.A.A.F. 2007); *United States v. Hargrove*, 51 M.J. 408 (C.A.A.F. 1999); *United States v. Haynes,* 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964); Rule for Courts-Martial [hereinafter R.C.M.] 304; *MCM*, pt. IV, ¶ 102; Dep't of Army, Pam. 27-2, Analysis of Contents, *Manual for Courts-Martial, United States*, 1969, Revised Edition, ch. 25, para. 127*c* (Section A; Art. 92, UCMJ), at 25-9 to 25-11 (28 July 1970). That position also runs contrary to an essential corollary of the rule of lenity requiring enforcement of a specific crime over a general crime under circumstances such as these. *See Busic v. United States*, 446 U.S. 398, 406–07 (1980); *United States v. Cotoia*, 785 F.2d 497, 502–03 (4th Cir. 1986); *United States v. Olinger*, 759 F.2d 1293, 1299–1300 (7th Cir. 1985); *see also United States v. LaPorta*, 46 F.3d 152, 156–57 (2d Cir. 1994).

This case does not involve the sort of order to do something requiring immediate compliance and an accused's defiant refusal to obey as contemplated for proper prosecution under Article 90, UCMJ. *See, e.g., United States v. Pettersen*, 17 M.J. 69, 70–72 (C.M.A. 1983). Instead, here we have an order imposing restriction to post on 6 May 2011, violated by appellant three times—first 27 days later on 3 June 2011, then 13 days after that, and finally 5 days after that—never

---

[1] "[(1)] [I]f in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed; or [(2)] if the violation or failure to obey is a breach of restraint imposed as a result of an order. In these instances, the maximum punishment is that specifically prescribed elsewhere for that particular offense." *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*)], pt. IV, ¶ 16.e(1)–(2) Note.

[2] And inevitably leads to absurd results, such as a soldier who breaches arrest or escapes from pretrial confinement suffering significantly less exposure to punishment than that of a soldier who breaks restriction. *See* UCMJ arts. 90, 95, 134; *MCM*, pt. IV, ¶¶ 14.e(2)–(3), 19.e(3)–(4), 102.e.

with any indication of the sort of immediate and personal defiance of his commander's authority or personal affront to his commander's dignity.

It is telling that, in this case, we have both parties and the military judge agreeing that, under *United States v. Hargrove*, the punishment of what was ostensibly a violation of Article 90, UCMJ, must be capped at 30 days confinement—not an unreasonable interpretation of that opinion and one that reveals all involved understood that the violation of the order was a breach of restriction as defined under Article 134, UCMJ.[3]

Prior to plea the following discussion occurred:

> DC: Your honor, based on the 802 this morning the question remained about the appropriate punishment for Charge I . . .
>
> MJ: The appropriate punishment for Charge I, regarding the maximum punishment correct?
>
> DC: Yes, Your Honor.
>
> MJ: The defense counsel . . . was correct.  Based upon *Hargrove* it has been long held within military law that you may not charge or a charge or offense may not be escalated in severity by charging them as violations of an order or willful disobedience of a superior, and then stating that you can have a regular charge of breaking restriction, then upgrade it to willful disobedience of a superior.  It looks like he just basically broke whatever restriction was placed upon him by the command and so the maximum punishment for Charge I will be 30 days . . . .

Appellant then entered pleas of guilty.  As the providence inquiry commenced the following discussion ensued:

> MJ: Please take a look at the Specification of Charge I, in violation of Article 90 of the Uniform Code of Military Justice.  Wait a minute, earlier you pled guilty to all of the

---

[3] Though, under the circumstances of this case, the offense might very well be better described as an Article 86, UCMJ, violation.  *See Haynes*, 15 U.S.C.M.A. at 126, 35 C.M.R. at 98.

Charges and their specifications. We stated before that based on *Hargrove* that this would not be a valid Charge but instead it should be--

TC: It is a valid charge, I think what *Hargrove* stand[s] for is when calculating the maximum punishment.

MJ: We are just going to look at the maximum sentence. He is still pleading guilty to disobeying the order?

ADC: Yes, ma'am.

MJ: But he will just be sentenced for the actual order that was disobeyed?

ADC: *Yes, ma'am, because the grounds of the offense is breaking restriction and not violating the order. The punishment just becomes whatever it is for that offense* [(emphasis added)].

MJ: Government?

TC: We were just going to say we don't believe that Article 134 works in reverse. We haven't had an opportunity to decide in those regards.

MJ: This is just FYI, the case that was cited in *Hargrove*, you have the cite: 51 MJ 408?

TC: Yes, ma'am, we haven't had a chance to take a look at that. We don't object to the 30 days sentencing but in terms of whether or not it is preempted.

MJ: Okay. Well then we will continue. . . .

The military judge then proceeded to engage appellant in a discussion about willful disobedience. In her description of the elements, she explained that "[w]illful disobedience means an intentional defiance of authority." Appellant stated that he understood the elements. And then, in pertinent part, the following discussion occurred:

MJ: And did you willfully disobey his command?

ACC: Yes, ma'am.

. . .

> MJ: And how did you disobey the command?
> ACC: There is [sic] two or three instances where I left post. I had an individual take me to a friend's house off of W.S. Young sometime early, mid-June. I had somebody take me down Rancier next to Bowl-A-Rama to purchase heroin from my drug dealer. And another instance was when someone had taken me to Chase Bank in Harker Heights, ma'am.
>
> . . .
>
> MJ: And why didn't you obey it?
>
> ACC: I can't really recollect why I didn't obey it ma'am, I just pretty much felt like it was my own decision and I didn't feel like it was right to be restricted to post and stuff. I realize that now but it is too late.
>
> MJ: This was intentional disobedience on your part?
>
> ACC: Yes, ma'am.

The stipulation of fact states that on 6 May 2011, appellant "received a lawful order from his Company Commander that he had certain *conditions on liberty*, namely he was to remain on the Fort Hood Installation and if he needed to go off of the Installation, he was to request permission through his chain of command [(emphasis added)]."[4] The stipulation goes on to state "[t]hat on or about 3 June 2011, 16 June 2011, and 21 June 2011, the Accused willfully disobeyed the lawful command not to leave the Fort Hood Installation by leaving the Fort Hood Installation."

The providence inquiry therefore reveals the following: (1) appellant, relying on the advice of his defense counsel, understood that his criminal liability was based on "the offense [of] breaking restriction and not violating the order;" (2) the military judge and parties stopped with an admission of an intentional violation of the order without any discussion as to whether appellant's conduct amounted to intentional

---

[4] A fact that itself establishes the necessary and proper application of the ultimate offense doctrine in this case. *See Mack*, 65 M.J. at 110; *Hargrove*, 51 M.J. at 409–10.

7

defiance of authority, a distinction that is necessary to properly differentiate Articles 90, 92, and 134, UCMJ, under the circumstances; and (3) the military judge engaged in no discussion with appellant to differentiate between willful disobedience and breaking restriction.

In relation to intentional defiance, the admissions of a heroin user that he breached restriction to go off post and buy heroin; that he couldn't "really recollect why [he] didn't obey [the order] . . . that [he] just pretty much felt like it was [his] own decision and [he] didn't feel like it was right to be restricted to post and stuff;" and that he "realize[d] that now but it is too late," is as much evidence of heedlessness as it is intentional defiance. *See MCM*, pt. IV, ¶ 14.c(2)(f); *United States v. Byers*, 40 M.J. 321, 323–24 (C.M.A. 1994); *Pettersen*, 17 M.J. at 70–72. This, in conjunction with the facts that: the law requires more than simply an intentional violation of an order imposing restraint to be guilty under Article 90, UCMJ; the lack of any discussion elucidating appellant's understanding of criminal liability under Article 90, UCMJ, despite his counsel's articulation prior to plea that the basis of his guilt was a different offense; and the parties' characterization of appellant's misconduct as a breach of restriction or condition on liberty, is enough to reject the plea to Article 90, UCMJ. *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538–39, 40 C.M.R. 247, 250–51 (1969)) ("The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts."); *see also Hargrove*, 51 M.J. at 409–10.

On another matter, this case also serves as another example where government authorities failed to document the reasons for excessive post-trial delay. Other than reference in the record to 15 days of delay for submission of appellant's Rule for Courts-Martial 1105 matters, there was no explanation for the 266 days required to process a 119-page record of trial of no great complication. *See, e.g., United States v. Harvey*, 64 M.J. 13, 23 (C.A.A.F. 2006). Appellant complained of this delay in his post-trial submissions, and while the staff judge advocate responded to alleged legal error in his addendum, no explanation was offered at the time.

Contemporaneously documenting reasons for post-trial delay is necessary to properly administer our system of justice and meet the demand for transparency, vigilance, and accountability expected. Explanation for delay should be made part of the record and be available for review, at all relevant times, including convening authority action. The purpose of documenting reasons at the time is to encourage the exercise of institutional vigilance. It also ensures timely provision of explanation that will encourage accountability, and better assist staff judge advocates, convening authorities, and this court in resolving these issues of lengthy post-trial processing. *See United States v. Moreno*, 63 M.J. 129, 143 (C.A.A.F. 2006); *United States v. Canchola,* 64 M.J. 245, 247 (C.A.A.F. 2007); *United States*

8

CARROLL—ARMY 20111158

*v. Arias,* 72 M.J. 501, 505–06 (Army Ct. Crim. App. 2013); *United States v. Bauerbach*, 55 M.J. 501, 506–07 (Army Ct. Crim. App. 2001). Recognizing the explanations provided for the purpose of this appeal, produced 11 and 12 months after action, respectively, and acknowledging the fact of strained resources in this jurisdiction, I would grant relief in this case to resolve the matter of excessive post-trial delay that apparently went unexplained before the convening authority. *See* UCMJ art. 66(c); *see also United States v. Toohey*, 63 M.J. 353, 362–63 (C.A.A.F. 2006); *United States v. Tardif*, 57 M.J. 219, 223–25 (C.A.A.F. 2002); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010).

I otherwise concur with the majority decision.

FOR THE COURT:

NGER

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court

9